

FILED

OCT 01 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ROSEE TORRES & NOEL TORRES,  )
                                 )     Ca: 19CV6526
          **Plaintiff**        )            JUDGE CHANG
Vs.                         )    Juc MAG. JUDGE FUENTES
                                   )
ROBERT METZ, Individually and as Agent  )    Damages: Five Million ($5,000,000) Dollars
OF MR CAPITAL GROUP, LLC, and MR  )
CAPITAL GROUP, LLC                  )     **JURY DEMAND**
          **Defendants**      )

### VERIFIED COMPLAINT FOR DAMAGES

Plaintiffs, **Rosee Torres** and **Noel Torres**, *pro se* ("**Torres**")  brings this action against the defendants, **Robert Metz** ("**Metz**"), Individually and as Agent for **MR Capital Group, LLC**, and **MR Capital Group, LLC**. ("**MR Capital**"), under the RICO statute and against Defendants for using their positions to wrongfully and fraudulently purchase  **Torres'** home and residence at a rigged auction from a fraudulent, forged note, fabricated default, fabricated foreclosure and fraudulent summary judgment,  causing Plaintiffs to maintain poor credit and loss of opportunities requiring credit and causing extreme physical, emotional and mental pain and distress causing hospitalization and medication.

### NATURE OF THE ACTION

On April 26, 2016, Wells Fargo Bank, N.A. filed  Complaint for Foreclosure against Rosee Torres and Noel Torres, even though Noel Torres is not named on the disputed, forged and fabricated 2004 blank page World Savings note. From that document, with pages never before seen prior to litigation, Wells Fargo succeeded in obtaining a Summary Judgment on February 26, 2018. The Court, under Judge William Sullivan, also entered the following Orders**: (a)** a Judgment for Foreclosure for and Sale for $309,719.34 consisting of $236,009.73 in disputed loan, $69,618.96 in interest from 2013 to July 18, 2017 with no credits for payments from 1999 to 2017, costs of suit $1,340.65 and attorneys fees of $2,750.00 for Manley Deas & Kochalski and

its attorney, Joel Knosher, No. 48928; **(b)** Order on Creditor's Motion for Relief from Automatic Stay and Abandonment (First Mortgage) by Bankruptcy Judge Deborah Thorne of July 18, 2018; (c ) The matter was appealed to the Illinois Appellate Court, 1st District, but during said Appeal, Wells Fargo sold the property by auction held by (Intercounty) Judicial Sales, Corporation on January 4, 2019, **(c )** Order Confirming Report of Sale and Distribution and for Possession with a deficiency of $178,947.85, entered on February 19, 2019 entered by Judge Edward King; (d) Wells Fargo and its agent, Robert Metz, representing buyer, MR Capital Group, LLC a/k/a Mr. Capital Group, LLC sought eviction through the Sheriff of Cook County shortly thereafter. The LLC buyer is not registered or licensed by the Illinois Secretary of State, and Plaintiffs were informed that it is a front, non-existent company for Wells Fargo since Wells Fargo has been terminated from doing business in the City of Chicago and State of Illinois. (e) Plaintiffs appeal in the Appellate court is pending, No. 19-1718.

Wells Fargo produced no original documents, originals destroyed when World Savings denied Rosee Torres' loan application on February 21, 2007 and April 12, 2007 for properties at 3542 West Beach and 3550 West Beach for income purposes, since plaintiffs were retiring. No application was taken for 3546 West Beach, the property at issue. Wells Fargo produced no contract, no lien, no assignment, nor endorsement, no allonge – judgments were granted on their oral word only while Torres' Jury Demand, Affirmative Defense, and Counter Complaint with exhibits were stricken with prejudice, There was no trial or hearing on the merits. Defendants and Wells Fargo informed **Rosee Torres** that race, color, ethnicity, mistaken national origen, gender (female), age/senior citizens, and disability **(Noel)** were prime factors in targeting Torres.

## JURISDICTION AND VENUE

2.       This Court has jurisdiction over the subject matter in this action and under federal questions: 28 U.S.C., Sec. 1331, 1342(a)(3) & (4); RICO statute: 18 U.S.C., Sec. 1942(c), Civil Rights Statutes for racial, color and ethnic, age/senior .citizens, gender and disability discrimination: 42 U.S.C., Sec. 1964, 1968, 1981, 1985; Fraud in fabricated, ID theft, 17 forged predatory sub-prime fake mortgage/loans through Wells Fargo Bank, N.A. (a Calif. Corporation) and Wells Fargo Home Mortgage (an Iowa Corp.), Fair Debt Practices Collection Act, 15 U.S.C., Sec. 1602 et seq.; Equal Credit Opportunity Act, 15 U.S.C., Sec. 1691; under Federal Rules of Civil Procedure, 60, 60(b);

-2-

Supplemental Jurisdiction, 28 U.S.C., Sec. 1367(c). Venue is based on the location of all parties, Illinois residents, and amount in controversy over $75,000.00.

## THE PARTIES

3.     **Rosee Torres** and **Noel Torres**, plaintiffs, are Chicago residents, **Rosee Torres, individualized and as married woman,** having purchased the property at 3546 West Beach Avenue, Chicago, IL in 1999 and property being paid in full in 2004,. Summary judgment from one of 17 fabricated, fake sub-prime predatory mortgage/loans through Wells Fargo Bank, N.A. (a California Corporation) hereinafter "Well Fargo" and Wells Fargo Home Mortgage (an Iowa Corporation), hereinafter "Wells Fargo" entered against them in the Circuit Court of Cook County, Chancery Division, No.  2016 CH 05738, February 19, 2018 and property sold at auction to defendants, **MR Capital Group, LLC. Noel Torres** is not on the fake, forged, fabricated sub-prime predatory mortgage/loan but named I the foreclosure and summary judgment.

4.     Defendant, **Robert Metz**, is agent  of **MR Capital Group, LLC.**, purchaser of 3546 West Beach Avenue at rigged judicial sale by Intercounty Judicial Sales, Inc., on January 4, 2019 based on aforesaid fraudulent Summary Judgment. Mr. **Metz** is also the licensed Illinois attorney for **MR Capital Group, LLC**.

5.     Defendant**, MR Capital Group, LLC** a/k/a **Mr. Capital Group, LLC**., purchased the property at 3546 West Beach Avenue, Chicago, IL at rigged auction by Intercounty Judicial Sales, Inc., on January 4, 2019 based on  one of 17 aforesaid fraudulent, fabricated predatory sub-prime mortgage/loans through Wells Fargo.  **MR Capital**  is not licensed or registered with the Illinois Secretary of State as an LLC or any other entity.  Defendant is also Defendant in pending federal Court no. 19-CV-00112, *Rosee Torres et al v. Judicial Sales Corporation*, now on appeal before 7th Circuit.  Related also is pending Appeal on Chancery Case in Illinois Appellate Court, No. 19-1718.

## STATEMENT OF FACTS.

6.     Defendant's claim is based on a fabricated predatory  sub-prime mortgage/loan from blank, undated, un-notarized, un-initialed  2004 defunct World Savings forms forged and illegally created by World Savings and Wells Fargo to represent a fake 2007 application. **(EX. 1-A)**

7.    Defendants' "Pick-A-Payment Mortgage Note' on which their claim is based was settled by Release on November 15, 2004. **(EX. 1-B)** It was cancelled by Plaintiffs on February 8, 2007, **(a)** due to multiple, disputed, fake account numbers; **(b)**   plaintiff unable to place settlement funds as down-payment on  two other properties located at 3542 West Beach and 3550 West Beach, as the World Savings document had incorrect address of 3546 West Beach and all original documents destroyed by 2007 **(EX. 1-C); (c)** World Savings and its following banks, Wachovia and Wells Fargo had negative demographic reports  regarding Hispanics and Afro-Americans/Blacks and persons of color  in urban cities and areas a Chicago; **(e )** neither Plaintiff was gainfully employed and **Noel Torres** was disabled; **(f)** both Plaintiffs were entering retirement and Social Security benefits  were not sufficient to qualify for a loan or mortgage; **(g) Rosee Torres** needed a non-minority, employed  male co-signer, as the financial institutions  did not loan to women "blacks and spics" alone or married women without qualified co-sponsoring spouses; **(h)** Plaintiff's purchases were required to be in an area designated for their racial, color and ethnic background, preferably the South or Westside of Chicago, i.e., redlining; **(i)** forged and misspelled name acquired through ID theft as provided Wells Fargo when it officially took over World Saving in 2010-2011 **(EX. 1-D)**

8.    Defendants' fraudulent Pick-A-Payment Mortgage Note" on which their claim is based was DENIED by World Savings on February 21, 2007, with promises of over-payments to be applied to an IRA account, said promise on which Plaintiffs detrimentally relied to December 2015 when Wells Fargo reneged and refused to honor. **(EX. 2)**

9.    Defendants' fraudulent "Pick-A-Payment Mortgage Note" on which their claim is based was DENIED by World Savings on April 12, 2007 in FAX to Plaintiffs' then attorneys, Hon. R. Eugene Pincham (Ret'd) and Frederick Cohn, said DENIAL on which Plaintiffs detrimentally relied unti  Wells Fargo breached and cancelled on December 2025 and February 2016.   **(EX. 3)**

10.    Defendants' fraudulent claim is inconsistent and contrary to the fact that Plaintiff's property is paid in full, World Savings having recorded a Satisfaction with the Cook County recorder of Deeds on March 21, 2007, said Satisfaction on which Plaintiffs detrimentally relied until beached and cancelled by Wells Fargo on December 2015 and February 2016; **(EX. 4)**

-4-

**11.** Defendants' fraudulent claim is inconsistent and contrary to the Judgment and Dismissal with Prejudice on May 17, 2011 of class action with World Savings, Wachovia Mortgage and Wells Fargo were parties and Rosee Torres one of the benefactors, on which Plaintiffs detrimentally relied: *In re Wachovia Corporation "Pick-A-Payment" Mortgage Marketing and Sales Practices Litigation*, U. S. District Court of California, San Jose Division, 5:09-md-02015-jf. **(EX. 6-A, 6-B, 6-C)** Wells Fargo provided Plaintiffs with conformation of settlement as public record. **(EX. 6-D)**

**12.** Defendants fraudulent claim is based on Wells Fargo's losses of customer and client documents due to a "computer glitch" which was not announced until AFTER the Circuit Court's Summary Judgment of February $26$, 20 $18$, as defense in not having to produce any original documents, no contracts, no lien, no assignment, no endorsement, no allonge. **(EX. 7, Articles 1-7) The Defendants lacked standing and the court lacked jurisdiction to decide case.**

**13.** Defendants' fraudulent claim is based on Wells Fargo's December 2015 and February 2016 breach , cancellation and refusing to honor the Justice Department settlement in 2011 regarding discrimination as to loans and mortgages to persons with disabilities, as **Noel Torre**s, despite Plaintiff' detrimental reliance on said judgment as a protection for **Noel Torres.** **(EX. 8)**

**14.** Defendants' fraudulent claim is enforced by threats which caused plaintiffs, particularly **Noel Torres,** physical and emotional distress and mental anguish causing hospitalization and medication after the 2007 discriminative acts, and again in August 2019. **(EX. 9**) Defendants' acts consists of: **(a)** threats of arrest and eviction by the Sheriff of Cook County, **(b)** deportation of plaintiffs as illegal aliens (Plaintiffs are American born U.S. citizens); **(c )** changed the City of Chicago water account **by Metz** to **MR Capital** in April 2019 with threats of shutting off water to deem the property uninhabitable ; **(d)** changed the property tax records by **Metz** to **MR Capital** with threats of not paying and buying property in a tax sale/auction to force Plaintiff from premises**;; (e )** arson, in which Defendants will collect from insurance company, after having hi-jacked the insurance through Wells Fargo prior thereto and even though insurance which Plaintiff, Rosee Torres has been paying from 1999 to present. **(EX. 12)**

-5-

15.     Defendants fraudulent claim is reinforced by its colleagues, Wells Fargo and their attorneys, Josh Knoesher and Edward Peterka, from Ohio Based Manley Deas & Kochakski, LLP, who filed a fabricated note, default, and foreclosure in in April 2016 and Summary Judgment in February 26, 2018, which defendants were able to purchase property at a on January 4, 2019 at a sale of rigged auction, bragged about and producing a Manual by Wells Fargo for attorneys use in fabricating millions of fake, predatory sub-prime mortgages targeting towards Afro-American and Black communities, females, the elderly and disabled, in which Defendants' claim against Plaintiff is one of 17 known. **(EX. 10)** Others, fake accounts awarded through Wells Fargo, are:

**0483107462, 708/048310762, 011307961, 27028794, 0027028794, 4528888, 04528888, 004528888, 45206356, 045206356, 0045206356, 43197462, 043197462, 0043197462, 708/043107462, 512/0045206356 plus unknown accounts accomplished By juggling the numbers and using term "Redacted" to misrepresent federal agencies**

Defendants through their co-conspirator informed Rosee Torres of scheme that they can claim the judgment amount of $320,000+ on each fake (redacted) account when presented to the various federal agencies, unjustly enriching themselves in over $5million dollars to offset the billions in fines and penalties by the various government agencies. This does not include payments made by Plaintiff, Rosee Torres, from 1999 through 2015, extortion + blackmail.

16.     Defendants lacked jurisdiction to purchase the property, as Wells Fargo lacked jurisdiction to foreclose. **(EX. 11)** Plaintiffs' attorney, Felipe Gomez, has since withdrawn from Verified Motion, and case is on appeal.

## DAMAGES

17.     As a result of Defendants' wrongful, fraudulent, unethical conduct, Plaintiffs were harmed physically and emotionally with mental distress, medical and hospitalization, loss of credit and even part time or limited employment by both, loss of credit, forced into bankruptcy alleging fraud, No. 13068 in which Wells Fargo is an unsecured creditor whose claim is based on fraud, forgery of robo-signatures, to blank 2004 defunct World Savings undated, un-initialed, un-executed robo-signatures un-notarized to create 17 known (perhaps more) fabricated, fake predatory sub-prime mortgage/loan,  and damages to the family relationship. *Swearingen v. Momentive Specialty Chema, Inc.*, 662 F. 3d 969, 972 (7th Cir. 2011)

## **COUNT 1 – RACKETEERING INFLUENCED AND CORRUPT ORGANIZATION ACT**

18.     Plaintiffs re-allege Paragraphs l through 17 and incorporates same herein.

19.     Elements of the Racketeering Influenced and Corrupt Organization Act (hereinafter "RICO"), Sec. 1962(c ) civil claim, is applicable to establish a claim under said Section if Plaintiffs prove: **(a)** that there is a defendant person (Metz); **(b)** that same was employed by or associated with an enterprise; **(c )** that defendants engaged in or affected interstate commerce; (d) that the defendant person operated or managed the enterprise; **(f)** through a pattern of racketeering activity, including fraud, **(g)** that plaintiffs were injured in their business or property by reason of the pattern of racketeering activity.

20.     That Defendants and each of them violated RICO, which prohibits the use of an enterprise in interstate commerce through a pattern of two or more acts or events. 18 U.S.C., Sec. 1962(d) The enterprises here are (a) the Circuit Court of Cook County in which Metz, as an attorney, is an officer of the Court, (b) Wells Fargo Bank and Wells Fargo Home Mortgage acting as collection agents for **Met**z and **MR Capital** even after the sale of property on January 4, 2019 through July 2019 in maintaining dozens of direct contact with Plaintiffs by U. S. Mail and telephone; and (c) **MR Capital** operating as a "buyer" of the property at the rigged auction on January 4, 2019, knowing they were the buyers 2 weeks before the auction in warning Plaintiffs to vacate the premises in December 2018 to avoid physical eviction, arrest and deportation.

21.     Defendants   and each of them used their superior position and influence with Wells Fargo and the Courts which they claimed "they owned" to the extent of controlling certain judges, the Clerks office as to which documents would be submitted or omitted, and even write the Orders and decisions of the Court to assure victory and success to fraudulently obtain Plaintiffs' property at 3546 West Beach Avenue, Chicago, IL. and thousands of other properties in Illinois, primarily in Cook County and Chicago's minority communities.

22.     That as a direct and proximate result of Defendants' violations of RICO, Plaintiffs were damaged as described above in  the Damage section.

23.     **WHEREFORE**, Plaintiffs respectfully request the following relief against all Defendants:

A. Compensatory damages in the amount of Five Million ($5,000,000) Dollars, jointly and severely;

B Punitive damages in an amount that will deter these Defendants and others similarly situated;

C. Together with such other and further relief this Court deems just and proper.

## II. FRAUD, VIOLATIONS OF FRCP 60, 60(b)

24. Plaintiffs repeat Paragraphs 1 through 23 as re-alleged and stated herein.

25. That the Federal Rules of Civil Procedure 60, 60(b) has the power to void fraudulent transactions by federal banks under supplemental jurisdiction, even of the transaction was in State Court.. **18 U.S.C., Sec. 1341, 18 U.S.C., Sec. 1844,** violations of the **Dodd Frank Title XIV Mortgage Reform and Anti Predatory Lending Act**.

26. Defendants acts would also void co-conspirator Defendants and each of them in fraudulently and unlawfully acquiring the property through the Court system, the sale and purchase of 3546 West Beach Avenue, Chicago, IL for which defendants and each them individually and/or through their agents, explained that that could re-sell the property for a half million dollars as 3542 West Beach, or more provided the neighborhood became or remained predominantly "white", referring Plaintiffs to neighborhoods in Chicago area where this action was successful (Near North/Cabrini Green area, West Loop, , South Loop, Logan Square, Humboldt Park, etc. ) The **Rooker-Feldman** Doctrine is not applicable in fraud cases. That in committing this intentional fraud, Defendants aided and supported knowledge of multiple violations of Illinois and Federal Foreclosure statutes:

a. Violations of Fair Debt Practices Collection Act, 15 U.S.C., Sec. 1602 et seq.;

b. Violations of thr Equal Credit Opportunity Act., 15 U.S.C., Sec. 1691;

c. Violations of the Truth in Lending Act, 15 U.S.C., Sec. 1601, Title 15, Ch. 41;

d. Violations of the Mortgage Service Act as World Savings and Wachovia were mortgage servicers who lacked standing to foreclose, affecting Wells Fargo's lack of standing. 12 U.S.C., Sec. 2605; 15 U.S.C., Sec. 1639(a);

e. Violations of Illinois Foreclosure statute in failing to give default date in Complaint, 735 ILCS 5/15-1502.5(c );

-8-

f.  Violations of Illinois Foreclosure statute in failing to provide Torres with Grace
    Period, 735 ILCS 5/15-1502.5;

g.  Violations of Illinois Foreclosure statute in failing to attach a Homeowner's Notice,
    735 ILCS 5/15-1504.5;

h.  Violation of Illinois Foreclosure statute in failing to establish rights, having no
    original contract, no lien, no assignment, no endorsement or allonge, and
    producing none to the Court, originals destroyed prior to 2007 when loan
    application denied and cancelled, 735 ILCS 5/15-1506;

i.  Violating Illinois False Claims Act and Federal False Claims Act by filing fake
    foreclosure with false information and fabricated mortgage. 740 ILCS 175/1 and
    31 U.S.C., Sec. 3729-3733;

j.  Violations of the federal statute of limitations, filing claims by even financial
    institutions are barred after six years, in this case for a fake 2007 date, Wells Fargo
    was barred from its claim after 2013, therefore lacked standing and jurisdiction,
    28 U.S..C., Sec. 2501;

k.  Collateral estoppel applies to fraud cases whether extrinsic or intrinsic,
    misrepresentation or other misconduct by adverse party (Defendants herein).
    FRCP 60(b)(3);

l.  Collateral estoppel applies to fraud cases in which newly discovered evidence
    which by due diligence could not have been discovered in time to move for a new
    hearing or trial under 59(b) as in this matter, as **Torres**' prior attorneys passed in
    2008 and 2010 and 2016, and Defendants and their agents and informants
    provided **Torres** with new info up to July 2019. FRCP 60(b)(2)

m.  Violations of the Uniform Commercial Code, Sec. 309 & 418(d); 28 U.S.C., Sec.
    1957 and 735 ILCS 5/15-1506.

Under federal statute when fraud is involved, the United States District Court has
jurisdiction to restrain transferring of title to or disposing of property by injunction. 18 U.S.C.,
Sec. 1345.

-9-

## 111. **VIOLATION OF CIVIL RIGHTS ACTS OF 1964, 1981 & 1985**

**29,**     Plaintiffs repeat Paragraphs 1 through 28 as though fully re-alleged hereon.

**30.**     Defendants violated the Civil Rights Act in fraudulently depriving Plaintiffs of their property **at** 3546 West Beach Avenue, Chicago, IL because of their race and color (Afro American/Black ), ethnicity (Hispanic), age as senior citizens, gender (female, **Rosee Torres**), disability **(Noel Torres)** and mistaken national origen. Plaintiffs are American born U. S. citizens. Defendants violated the Civil Rights Act of 1964, Title 42, Ch. 21, 42 U.S.C., Sec. 2000a; 42 U.S.C., Sec. 1981, l983 and l985, with the Court further denying Plaintiff rights based on Defendants and co-conspirators Wells Fargo's misrepresentations and deception, denying Plaintiffs a right to Jury trial and Equal Protection under the U. S. Constitution,  5th ,  7th  and 13 Amendments. Plaintiffs claim was not heard o the merits, but in a sham, semi- private hearing in which Defendants and co-conspitators, Wells Fargo, lacked standing and the Court had no jurisdiction.lacked standing. Proceedings in a court of justice as Chancery to determine the personal rights and obligations of the partied over whom the Court has no jurisdiction do not constitute due process. *Pennoyer v. Neff,* 95 U. S. 714 (1877); *Mutual Life Ins. Co. v. Squatly*, 172 U. S. 602 (1899)

31.     That as a direct and proximate result of the Defendants violations and misconduct, Plaintiffs were damaged as described above in the Damage section of this Complaint.

32.     **WHEREFORE**, Plaintiffs respectfully request the following relief against the Defendants and each of them:

A,     Compensatory damages in the amount of Five Million ($5,000,000) Dollars, jointly and severely;

B.     Punitive damages in an amount that will deter these Defendants , co-conspirators and others similarly situated;

C.     Together with such other and further relief this Court deems just and proper.

## IV. **NEGLIGENCE & WILLFULL MISCONDUCT**

**33.`**     Plaintiffs repeat Paragraphs 1 through 32 as if fully re-alleged herein.

**34.**     Defendant attorney, **Metz's** negligence and/or intentional refusal and failure to

investigate or research, and/or their intentional acts of deception and misrepresentation to the Courts were gross misconduct and unethical in violation of Illinois Supreme Court Rule 137. **Thomas v. Hillerman**, 333 Ill. App. 3d 132, 266 Ill. Dec. 669, 775 N.E. 2d 231 (4th Dist. 2002).

35. Defendant **Metz** violated the Illinois Rules of professional Conduct multiple times:

a. Knowingly making false statements of fact to tribunals and failing and refusing to correct said statements of material fact and law in violation of Rule 3.3(a)(1) of the Code;

b. Engaged in conduct which included dishonesty, fraud, deceit and misrepresentation by knowingly submitting to and filing false pleadings and information to the Courts to unjustly enrich himself in the purchase, enforcing fabricated foreclosure, summary judgment and rigged auction/sale of 3546 west Beach Avenue, violating Rule 8.4(c ) of the Code.

That as a direct and proximate result of Defendant's misconduct and negligence, Plaintiffs were damaged as described above in the Damage section of this Complaint.

36. **WHEFEFORE** Plaintiffs respectfully request the Court for the following relief against Defendant **Metz:**

**A.** Compensatory damages in the amount of Five million ($5,000,000_ Dollars;

**B.** For such other and further relief this Court deems just and proper.

## IV. CONSPIRACY

37. Plaintiff repeats Paragraphs 1 through 36 as though fully re-alleged herein.

38. The Defendants at various times as mentioned above entered into an agreement to cooperate with third parties as Wells Fargo Bank, Wells Fargo Home Mortgage, Intercounty Judicial Sales Corp., and the judiciary in an effort to fraudulently and wrongfully seize Plaintiffs' property because of the race, color, ethnicity, gender, age and disability and wrongfully re-sell for 5 to 10 times its original cost or $107,000, excluding non-whites and minorities, including Arabs and Muslims, in a newly gentrified area, plus intentionally scheming to illegally collecting from government agencies a judgment of $309,618.96 on each 17 fake accounts listed above, despite the fact of Defendants knowing that the property was PAID IN FULL. Defendants know and acknowledged **Torres** had 100% equity in property. Intent not required to prove conspiracy. However, Defendants and co-conspirators revealed their scheme of intent to defraud and how through a corrupt court and attorneys. **In re E. Bontkowski**, 785 N.E. 2d 126, 131 Ill. Ct. App. 2003)

-11-

39.     Defendants and each of them acted on their agreement by their above-mentioned misconduct.

40.     As a result of the abovementioned conspiracy Plaintiffs were damaged as mentioned above in the Damage section.

41.     **WHEREFORE**, Plaintiffs respectfully request the following relief fro the defendants and each of them:

A,      Compensatory damages in the amount of Five Million ($5,000,000) Dollars, jointly and severely;

B.      Punitive damages in an amount that will deter these Defendants , co-conspirators and others similarly situated;

C.      Other and further relief that this Court deems just and proper.

## V. RES JUDICATA AND COLLATERAL ESTOPPEL

42.     Plaintiffs repeat Paragraphs 1 through 41 and re-alleges as though fully set forth.

43.     Collateral estoppel is a branch of Res judicata. *Rekki v. Wildwood Indusries, inc.* 61 F. 3d 1313, 1416-17 (7th Cir. 1995). It applies if (a) an issue in a earlier action is the same as the issue in the current proceeding; (b) here was a final judgment on the merits in the earlier action; (c ) the party against whom the estoppel is asserted was a party or was in privity in the earlier action. The doctrine should not be applied unless it is clear that no unfairness will result to the party(ies) that would be estopped. *Goodwin v. Bd of Trustees of Univ. of Ill.*, 442 F. 3rd 611, 621 (7th Cir. 2006) In determining unfairness, the Court should look at the party's incentive to litigate the issue in the prior action*." Id* The Illinois Supreme Court has denounced the application of collateral estoppel under circumstances which force the defendant to appeal in order to present application of collateral estoppel in later cases Is unfair and does not promote efficiency. In this matter , the plaintiffs (who were defendants in the State case) and should be awarded the same privilege as to apply collateral estoppel. , as the State case was fraudulent, not heard on the merits and Plaintiffs were forced to appeal. *Herzog v. Lexington* **Township,** 167 Ill. 2d 288, 657 N.E. 2d 926, 931 (1995). The facts were not litigated, Defendants produced no documents as original contract, lien, assignment, endorsements to prove their case. The decision was made on word only and presenting Plaintiff, **Rosee Torres**, with a copy of a forged, misspelled

-12-

un-notarized and undated robo- signature on a 2004 World Savings page (Rosie Torres) on a 2004 blank World Savings form in open court but not the entire document.in State Court by Wells Fargo, with Defendants present but not providing any Notice or filed Appearance to Plaintiff.

44.      *Res judicata* is applied when a final judgment on the merits as the Summary Judgment herein, provided case was heard on the merits. It was not. ***Brown v. Felsen, 99 S. Ct.*** 2205, 2209 (1979) citing ***Montana v. United States***, 440 U.S. 147, 153, 99 S. Ct 970, 973, 59 L.Ed.2d 210 (1979) However, it was final in the May 17, 2011 final judgment in ***In re Wachovia,*** 5:09-md-02015-jf which included World Savings and Wachovia since Wells Fargo took over the defunct institutions in 2010 and agreed to honor that decision which Plaintiffs detrimentally relied until Wells Fargo reneged on both written and oral agreements in December 2015 and February 2016 and filed foreclosure in April 2016.. Wells Fargo lacked standing, defendants **Metz** and **MR Capital lack** standing and the foreclosure, summary judgment and sale are void. The matter was litigated in prior Wachovia proceeding with a final judgment on the merits in which there is an identity of the parties, their privies. Id (citing ***Chicot County Drainage Dist. V. Baxter State Bank***, 308 U. S. 371, 378. 60 S. Ct. 317, 320, 84 L. Ed 329 (1940); ***Roboserve, Inc. v. Kato Kagaku Co., Ltd.,*** 121 F.3d 1027, 1034 (7th Cir. 1997)

**WHEREFORE**, Plaintiffs respectfully request the following relief from the Defendants and each of them:

A. Compensatory damages in the amount of Five Million ($5,000,000) Dollars, jointly and severely;

B. Punitive damages in an amount that will deter these defendants, their co-conspirators and others similarly;

C. Together with such other further relief that the Court deems just and proper.

## VI. ACTION TO QUIET TITLE

45. Plaintiffs repeat Paragraphs 1 through 44 and re-alleges as though fully set forth.

46. Defendants and each of them illegally, wrongfully and intentionally clouded title to Plaintiff, **Rosee Torres'** property at 3546 West Beach Avenue, Chicago, IL, as follows:

**a.** Recorded with  Cook County Recorder of Deeds an Affidavit correcting #190932201 from buyer, "Mr. Capital Group, LLC" to "MR Capital Group, LLC.", 04-09-2019 **(EX.14**)

**b.** Committing a Class A felony to collect $309,719.34+ in a rigged auction and sale and defendants and conspirators, Wells Fargo, initiated; to re-sell in one of 17 fake, un- authorized accounts, knowing Torres paid property in full and Wells Fargo had no contract, no lien, no assignment, no endorsement, no allonge;

c.  Metz, acting as Agent and  attorney for disputed buyer intentionally acted in bad faith filing and recording false information and failing to investigate validity of sale, violating Illinois and Federal False Claims Acts, Illinois Code of Professional Conduct;

d   Defendants false claim impairs and clouds title the real title of property, PAID IN FULL by Rosee Torres, which Torres can show by extrinsic proof that Defendants' Unlawful Claim of title is fraudulent, per FRCP 60, 60b, *et seq.*

e.  That Defendants know that Plaintiffs filed lawsuit on January 7, 2019 (3-days after fraudulent auction/sale) , in pending U. S. District Court, No. 19-CV-00112,  recorded Lis Pendens on August 16, 2019 **(EX. 15)**

**47.** That Defendants targeted plaintiffs and others based on race, color and ethnicity (Hispanic/Afro-American), elderly, gender (female) and disability, i.e., most vulnerable of society as acknowledged to Rosee Torres by Defendants and their agents and co-conspirators.

**48.** That as a direct and proximate result thereof, Plaintiffs were damaged as mentioned above in the Damage section, including but not limited to filing a Sheriff's eviction initiated by Defendants in April 2019, loss of sale of property to prospective legitimate buyers, physical, mental and emotional distress, hospitalization and medical treatment re Noel Torres.

49. **WHEREFORE**, Plaintiffs respectfully request the  following relief from the defendants and each of them:

A.  Compensatory damages in the amount of Five Million ($5,000,000) Dollars, jointly and severely;

B.  Punitive damages in a amount that will deter these Defendants, co-conspirators and others similarly situated;

D.  Other and further relief that this Court deems just and proper;

-14-

## VII. DEFAMATION OF CHARACTER

**50.** Plaintiffs repeat Paragraphs I through 49 and re-allege as though fully set forth.

**51.** Defendants and each of them are liable for defamation, libel and slander in committing the following unlawful acts: (a) falsely asserting and clouding title to Plaintiffs property at 3546 West Beach by publishing and recording false claim of title with Cook County Recorder of Deeds and notifying its potential buyers; (b) falsely claiming to Plaintiffs and third partied that Plaintiffs were illegal aliens about to be deported (**Torres a**re American born citizens); (c ) falsely claiming Plaintiffs were "deadbeats and behind in their mortgage" and ruining their credit, knowing property was paid in full and Plaintiffs had no mortgage with Wells Fargo, its co-conspirator, or its predecessors, World Savings and Wachovia Mortgage whose institutions Well Fargo took over; (d) referred to Plaintiffs as "Niggers and Spics" who had to be evicted, removed and/or or leave the area in order to increase value of property and re-sell the property to non-minorities in a newly gentrified area.

52. That as a direct and proximate result thereof Plaintiffs were damaged as mentioned above in the Damage section.

53. **WHEREFORE**, Plaintiffs respectfully request the following relief from the Defendants and each of them:

A. Compensatory damages in the amount of Five Million ($5,000,000) Dollars, jointly and severely;

B. Punitive damages in a amount that will deter these Defendants, co-conspirators and others similarly situated;

C. Other and further relief that this Court deems just and proper;

Date: October 01, 2019`

Rosee Torres, Pro Se

Noel Torres, Pro Se

99500
ROSEE TORRES AND NOEL TORRES
Plaintiffs –Pro Se
3546 West Beach Avenue
Chicago, IL 60651
1-773-384-9122

-15-

**VERIFICATION**

Under penalties provided by law, the undersigned certifies that the statements set forth in this Verified Complaint, except as to matters therein stated to be on information and belief and to such matters the undersigned certifies as aforesaid that they verily believe the same to be true.

Rosee Torres

Noel Torres

99500
ROSEE TORRES & NOEL TORRES
Plaintiff – Pro Se
3546 West Beach Avenue
Chicago, IL 60651
1-773-384-9122

# EXHIBIT 1

# LD SAVINGS | NOTICE OF RIGHT TO CANCEL - REFINANCING
(LENDER CURRENTLY HAS A LOAN ON THE PROPERTY)

FILED -1

2019 NOV 27 AM 10:56

CIRCUIT COURT OF COOK
COUNTY ILLINOIS
CHANCERY DIV

DOROTHY BROWN — CLE:

## RIGHT TO CANCEL:

...ng into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction. ...gal right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events

...f this new transaction, which is February 7, 2007; or

...ou received your new Truth-In-Lending disclosures; or

...you received this notice of your right to cancel.

...this new transaction, it will not affect any amount that you presently owe. Your home is the security for that amount. Within 20 calendar days ...ive your notice of cancellation at this new transaction, we must take the steps necessary to reflect the fact your home does not secure ...of credit. We must also return any money you have given to us or to anyone else in connection with this new transaction.

...ep any money we have given you in this new transaction until we have done the things mentioned above, but you must then offer to return the ...he address below. If we do not take possession of the money within 20 calendar days of your offer, you may keep it without further obligation.

...of your home has the right to cancel this new transaction. If one owner cancels the transaction, cancellation is effective for all owners.

## TO CANCEL:

...ish to cancel this new transaction, you may do so by notifying us in writing at: WORLD SAVINGS, FINAL DOCUMENTATION, ATTN:
...ING SUPPORT DEPARTMENT, 4701 WISEMAN BOULEVARD, BUILDING 0397, SAN ANTONIO, TEXAS 78251, FAX NUMBER (210)
(No other office or representative of World Savings is authorized to accept your written notice to cancel.)

...se any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing ...op one copy of this notice because it contains important information about your rights.

...cel by mail or telegram (or fax), you must send the notice to the above location no later than midnight of February 10, 2007 (or midnight of the ...ness day following the latest of the three events listed above in Section...). If your send or deliver your written notice to cancel some other way, ...r delivered to the above address no later than that time.

## CANCELLING THIS TRANSACTION    SEE ATTACHED EXPLANATION. 0045238888 NOT AGREED TO.

**I TO CANCEL (DO NOT SIGN HERE UNLESS YOU WISH TO CANCEL)** HAVE ALREADY WAIVED RIGHTS
VARIABLE LOAN, HAS INCONSISTENT SET OF FIGURES, INCORRECT INT & ACCT. NOS.
...ler's Signature _____    Date _2-08-07_

...contact the Closing Agent if you decide to cancel.

## ACKNOWLEDGEMENT OF RECEIPT OF COPIES

...MY SIGNATURE WHICH FOLLOWS, I acknowledge that I received two copies of this Notice of Right to Cancel to keep (plus one to sign and ...e to World)

...rower's Signature _____    Date _2-08-07_
ROSE TORRES

...perty Address    3546 N BEACH AVENUE
CHICAGO, IL 60651-2201

...then return a signed copy of this Notice of Right to Cancel to the address shown above. Keep the other two copies

NON-BORROWING OWNER

$P_n$ 4



**EX. 1-A**

13

RIGHT TO CANCEL

_...are entering into a new transaction to increase the amount of credit previously provided to you. Your home is the security for this new transaction._

_...have a legal right under federal law to cancel this new transaction, without cost, within three business days from whichever of the following events occurs last._

the date of this new transaction, which is **February 7, 2007**; or

the date you received your new Truth-in-Lending disclosures; or

the date you received this notice of your right to cancel.

**FILED - 1**

**2007 NOV 27 AM 10: 14**

CIRCUIT COURT
COUNTY
CHANCERY DIV

DOROTHY BROWN
CLERK

HOW TO CANCEL

...decide to cancel this new transaction, you may do so by notifying us in writing at **WORLD SAVINGS, FINAL DOCUMENTATION, ATTN: OPERATIONS SUPPORT DEPARTMENT, 4101 WISEMAN BOULEVARD, BUILDING C307, SAN ANTONIO, TEXAS 78251, FAX NUMBER (210) -1291.** (No other officer or representative of World Savings is authorized to accept your written notice to cancel.)

...may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing... Keep one copy of this notice because it contains important information about your rights.

...cancel by mail or telegram (or fax), you must send the notice to the above location no later than midnight of February 10, 2007 (or midnight of the ... business day following the latest of the three events listed above in Section A). If you send or deliver your written notice to cancel some other way, ...be delivered to that above address no later than that time.

**CANCELLING THIS TRANSACTION** SEE ATTACHED. INCORRECT ACCT. NUMBERS, NOTARY
SO INCORRECT, ETC., ETC. UNABLE TO RESOLVE BY PHONE.
**...ISH TO CANCEL** (DO NOT SIGN HERE UNLESS YOU WISH TO CANCEL) DOCUMENTS PERTAINING TO
...JUSTABLE RATE LOANS WITH FIVE (5) INCONSISTENT SET OF FIGURES CONFUSION !!!
...TAIN THE JULY 2005 __ 6% INTEREST FIXED RATE LOAN, SO CLOSE IN 20 DAYS.
...e attached.

...contact the Closing Agent if you desire to cancel.

ACKNOWLEDGEMENT OF RECEIPT OF COPIES.

...MY SIGNATURE WHICH FOLLOWS, I acknowledge that I received two copies of this Notice of Right to Cancel (plus one to sign and ...here to Work).

...owner's Signature _[signature: Rosee Torres]_          Date: **2 - OF - 07**

**ROSEE TORRES**

...operty Address:      **3545 W BEACH AVENUE
CHICAGO, IL 60651-2201**

...ase return a signed copy of this Notice of Right to Cancel to the address shown above. Keep the other two copies

_[handwritten: 4C, Pg 3]_

_[handwritten: 12]_

Rosee Torres   CANCELLATION -   Loan No. 0045206356

FILED - 1                                              February 8, 2007

2017 NOV 27    **To finalize.** Please review this cancellation, which by your own document, gives twenty (20) documents, account numbers, contradictions and inconsistencies which falsely appear as a multitude of separate loans. Even the cover sheet has incorrect account number. Ex. a, b

CIRCUIT
CHANCERY DIV

1. **First,** according to your January 30, 2007 documents I executed and already sent back to you, receiving a confirmation letter of February 7, 2007 which makes this matter is closed and finalized. However, those mysterious new loan nos., amounts, etc. must be corrected. Ex. c

3. **Second,** your February 1, 2007 Pick-A-Payment document has the incorrect loan number of 0045238888. Ex. d [I have only ONE loan. Is there a customer mix-up?]

4. **Third,** your February 1. 2007 Pick-A-Payment document has the incorrect amount of $212,000 as the amount requested. Ex. d

5. **Fourth,** your February 1, 2007 Pick a Payment Loan document is incorrect, as this is a not an adjustable loan, but a fixed principal and interest loan. This cancellation applies to all other adjustable loan, erroneous accounts, including Acknowledgement. Ex. d F

6. **Fifth,** your February 1, 2007 Pick-A-Payment document with monthly payment amount of $778.31 is incorrect, as your February 7, 2007 confirmation both faxed and is being mailed to me already stating $756.28 as the monthly payment commencing April 1, 2007. Ex. d

7. **Sixth,** your January 28, 2007 Pick a Payment Loan request is cancelled for the same reasons; the amount requested of $208,000 is incorrect; the monthly payment of $766.20 is incorrect and both are inconsistent with the January 30, 2007 documents I executed and sent your office after which I received a faxed confirmation letter of February 7, 2007. Ex. e

8. **Seventh,** your February 1, 2007 Truth in Lending Statement Disclosure has the incorrect and unacceptable annual percentage rate of 7.635%, it should be 3.9%. My current annual rate is only 5.2%, so why would I apply for a higher rate loan?  (Please review my last loan with you on the prior 11-16-04 disclosure attached hereto. Ex. k) Also, the account number is incorrect (0045238888). Am I mixed up with someone else? Ex. g., h

9. **Eighth,** your February 1, 2007 Truth in Lending Statement Disclosure has an incorrect and unacceptable finance charge of $436,384.08. Ridiculous. The fair market value of the property is less than a third of that. So I am awaiting an explanation as to how you arrived at your figures. Again, please review my prior 11-16-04 disclosure of only $80,957.95, attached hereto. The account number on this Disclosure is incorrect also (0045238888) Ex. g, h

10. **Ninth,** your February 1, 2007 Truth in Lending Statement Disclosure has the incorrect amount to be financed, as $209,837.08. Take a look at the closing statement attached hereto. The amount is $175,000.  Also, take a look at the prior 11/16/04 Truth in Lending Statement, indicating only $171,342.00 Ex. g, h                          C 170-17

11. **Tenth,** your 2nd February 1, 2007 Truth In                        C 446
incorrect, exorbitant amount as to total payments being $6-                C 777-78
                                                          g Statement Disclosure has the
                                                          i, an even more ridiculous

EX. 1-A

FILED -1

Rosee Torres   CANCELLATION -   Loan No. 0045218    2012 NOV 2 7 ... 2007

amount which is not acceptable. The entire property is valued at less than 1/4 of that. Again, take a look at the prior 11-16-04 Truth In Lending Statement, indicating only total payments of $252, 299.95. I'm trying to do better, not worse. With all the incorrect figures and account numbers, investigate the competency of your office and whether you have the right customer. Ex. h, k. .

The January 30, 2007 Truth In Lending Statement is equally disastrous and one which I am awaiting an answer to my many questions, or at least a written explanation as to other accounts not mine, as no. 0045218588.

12   Eleventh.   Your January 30, 2007 Truth In Lending Statement which has already been disputed and has the incorrect and unacceptable amount as to annual percentage interest rate of 7.037%, should be 3.9%. Please take a look at the prior 11-16-04 Truth In Lending Statement indicating my current interest rate is only 5.62%. You induced me into this loan to do better, which is why I am holding you to that 3.9% interest in the July 2005 agreement. Ex. i, k

13.   Twelfth.   Your January 30, 2007 Truth In Lending statement, already disputed has the incorrect and unacceptable, totally ridiculous finance charge of $343,488.24 when my current charge is only $80,957.95, per the 11-16-04 Truth In Lending loan, attached.  Ex. i, k

14.-   Thirteenth.   Your January 30, 2007 Truth In Lending Statement, already disputed, is incorrect and unacceptable, again totally ridiculous amount financed as $203,692.90. I request an explanation as to how you arrived at this figure when the entire house has a fair market value of 2/3 that. See 11-16-04 Truth In Lending Statement attached which indicates only $171,142.60. The closing statements indicate $175,000. Please review this contradiction. Ex. i, k.

15.   Fourteenth.   Your January 30, 2007 Truth In Lending Statement, already disputed, is incorrect and unacceptable. Total of Payments being a ridiculous $567,181.14. I request explanation as to how you arrived at this figure, when the whole house has a fair market value of far less than that, perhaps one-fourth (1/4) that amount.   Ex. i, k

16.   Fifteenth.   Your February 1, 2007 Deferred Interest Acknowledgement is also rejected because of incorrect account no. 0045218588. This is not signed or initialed. Remaining pages/package returned to you. Ex. j [A 3rd set of documents with incorrect acct. returned.]

17.   Sixteenth.   The appraisal report is grossly inflated. Please send a copy.

18.   Seventeenth.   The settlement includes costs and expenses as insurance and escrow (taxes?) which are paid by me. Please adjust and correct these added costs.

According to your Notice of Right to Cancel Refinancing and Truth In Lending Act you have twenty (20) days from February 7, 2007 to respond to what I call negligent, incompetent piece of work by your staff. Otherwise, I will make the monthly payments of $756.23 on a fixed principal and interest loan and make every effort to enforce the 3.9% interest rate promised on July 5, 2005 to which we agreed, and which induced me into a new loan in the first place. An explanation as to all the above is also requested. Also, I need one person to whom I can speak or correspond or communicate at World. Your letters have no names or identities of persons, and Customer Service reps do not reveal their identity. Each one has a different explanation. Please do not bombard me with anymore insulting and ridiculously outrageous figures. Just make the corrections on the inconsistencies and contradictions. Thank you.

Rosee Torres

"OFFICIAL SEAL"
MARIA T. GAUD
Notary Public

- Pg. 21

Section that I acquire in the future;

(b) All replacements of or additions to the property described in subsections (i) through (viii) of this Section; and

(c) All of the amounts that I pay to Lender under Paragraph 2 below.

IV.  **BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that (i) I lawfully own the Property; (ii) I have the right to mortgage, grant and convey the Property to Lender; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

COVENANTS

## RELEASE

Borrower/Buyer executes this Servicing and "Mortgage Servicing Transfer Disclosure" as part of Settlement and Release of all claims, including but not limited to: (i) dispute and adjustment and reduction of 12% interest as Borrower/Buyer from 2006 to (12/2006), or $29,542 to be applied as down payment as a new purchaser or refunded; (ii) dispute that there is no new purchase; (iii) credit for FORTY THOUSAND AND NO/100 ($40,000) paid by Borrower/Buyer to original mortgagee as down payment; (c) reinstatement overpayments to Interest and Principal and all monies applied to Applied Funds and Miscellaneous Funds, including monies applied to Closing costs and taxes – ELEVEN THOUSAND SIX HUNDRED FIFTEEN DOLLARS ($11,615) for a total of $80,157 and representing payment in full, applicable to all future mortgage servicing transfers.

This settlement is based on Saxon Mortgage's balance of $91,005.89 on its March 2005 Statement attached hereto, and World Savings balance of $80,157 Statement of November 2004, attached hereto. World Savings Agrees to record file with Recorder of Deeds, instrument with the appropriate Raw Borrower/Buyer or documents. Chicago Illinois.

Borrower/Buyer agrees to provide new purchaser to property at 3546 West Beach Avenue, Chicago, Illinois, said new Borrower/Buyer (D. Bizzell) to finance through World Savings under separate and distinct credit and mortgage terms as required by the Lender, correcting the name on _____ documents to new Borrower/Purchaser, rather than the undersigned. _____ as the Buyer.

EX. 1 A

x Torres                          5-17-XX

@ 95
C 375

See p. 2.

FINANCIAL

CHECK NO. 0036346

CIRCUIT COURT

COMERICA BANK
2 Embarcadero Center #200
San Francisco, CA 94111

90-37827121

2230 Foothill Blvd., Suite 1
Hayward, CA 94541
(510) 247-8970

| DATE | ESCROW NO. | AMOUNT |
|------|-----------|--------|
| 02/14/2007 | 43140085  406 SRP | $29,421.6 |

PAY TWENTY-NINE THOUSAND FOUR HUNDRED TWENTY-ONE DOLLARS and 63/100

ALAMEDA/CONTRA COSTA TRUST ACCOUNT

TO THE
ORDER
OF

ROSEE TORRES
3546 WEST BEACH AVENUE
CHICAGO, IL 60651

AUTHORIZED SIGNATURE

VOID AFTER SIX MONTHS

⑈0036346⑈ ⑆121137522⑈ 1892094887⑈

Settlement - WORLD SAVINGS

EX. 2-B

**FILED - 1**

**~~~~ NOV 27 ~~~~ EN**

CIRCUIT COURT
COUNTY
CHAMBERS ...

CLK

DOROTHY BROWN

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of ~~California~~ Illinois

County of Cook

On February 8, 2007 before me, Marie Warnsby
DATE                              NAME, TITLE OF OFFICER

personally appeared     Noel Torres
                        NAME(S) OF SIGNER(S)

☐ Personally known to me  OR  ☑ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledge to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

"OFFICIAL SEAL"
MARIE WARNSBY
Notary Public, State of Illinois
My Commission Expires 09/23/09

WITNESS my hand and official seal.

*Marie Warnsby*
SIGNATURE OF NOTARY

### OPTIONAL

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

CAPACITY CLAIMED BY SIGNED

☐ INDIVIDUAL
☐ CORPORATE OFFICER
_____
TITLE(S)
☐ PARTNER(S)    ☐ LIMITED
                ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____

SIGNER IS REPRESENTING

DESCRIPTION OF ATTACHED DOCUMENT

TITLE OR TYPE OF DOCUMENT

NUMBER OF PAGES

DATE OF DOCUMENT

SIGNER(S) OTHER THAN NAMED ABOVE

A.5

FoR Cancellation

14

(Page 1 of 6)

ELECTRONICALLY FILED
7/13/2016 11:55 AM
2016-CH-05738
PAGE 55 of 83

WORLD SAVINGS BANK, FSB

# FIXED RATE MORTGAGE NOTE

## PICK-A-PAYMENT℠ LOAN

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER 0044808886       DATE February 7, 2007

BORROWER(S) ROBEE TORRES, A MARRIED WOMAN sometimes called "Borrower" and sometimes called "I" or "me."

PROPERTY ADDRESS 3048 W BEACH AVENUE, CHICAGO, IL 60651-3221

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $200,000.00 , called "Principal," plus interest, to the order of the Lender. The Lender is WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred.

### 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at the yearly rate of 8.160% . Interest will be charged on the basis of a twelve month year and a thirty day month.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

SD000A.0(CA-08-02) JA1 (2000-08-02)    FIXED PICK-A-PAYMENT NOTE      Z1.    LENDER'S USE ONLY
Page 1

EX. 1-B

C 371

Fax Server          8/27/2008 4:41:10 PM     PAGE   3/007   Fax Server

(Page 3 of 5)

00 0227 0358

ELECTRONICALLY FILED
7/13/2016 11:55 AM
2016-CH-05738
PAGE 56 of 83

**1. PAYMENTS**

**(A)   Time and Place of Payments**

I will pay Principal and interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on April 1, 2007. I will make these payments every month until I have paid all of the Principal and interest, and (ii) any other charges described below that I may owe under this Note, and (iii) any charges that may be due under the Security Instrument. If, on March 1, 2037, I still owe amounts under this Note, I will pay those amounts in full at that date, which is called the "Maturity Date."

I will make my monthly payments at 1303 HARRISON STREET, OAKLAND, CALIFORNIA 94612 or at a different place if required by the Lender.

**(B)   Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 754.86. This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C)   Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the 1st day of April, 2024 and on that day every 12th month thereafter until the 122nd month, which will be the final payment change. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date, and as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance together with interest, including any deferred interest as described in Section 3(F) below, by the Maturity Date. However, the amount by which my payment can be increased will be no more than 7-1/2% of the then existing Principal and interest payment (the 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 80 days before the Payment Change Date.

THIS SPACE INTENTIONALLY LEFT BLANK

EX. 1-B

601800 2006-08-15   FOR 6303-04-01   ASTD PICK-A-PAYMENT NOTE
                                     Page 2

11

C 372

Fax Server      8/27/2008 4:41:10 PM    PAGE   1/007   Fax Server

(Page 1 of 6)

0515245355

(E) Deductable Increases; Additions to My Unpaid Principal

From time to time, the monthly payments may be increased to pay the total amount of monthly interest that is due. If the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

(F) Limit on My Unpaid Principal; Increase in Monthly Payment

My Unpaid principal balance can never exceed 125% of the Principal I originally borrowed, called "Principal Balance Cap." In as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limit also would be exceeded on the same date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date together with interest, in substantially equal payments.

(G)   Final Payment Change

On the 120th Payment Change Date my monthly payment will be recalculated as described in Section 3(D) above. From then the Payment Cap limitation will not apply.

(H)   Notice of Payment Changes

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date.

4. FAILURE TO MAKE ADJUSTMENTS

If for any reason Lender fails to make an adjustment to the payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any amount overpaid which I may have paid to partial prepayment of unpaid Principal.

5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so. The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due, if I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing. I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal. During the first 1 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $6,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $6,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

6. MAXIMUM LOAN CHARGES

If a law, which applies to the loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A)   Late Charges for Overdue Payments

If the Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Lender. The amount of this charge will be 6.000% of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

301590 (2008-08-2)     [001 (2006-08-2)       FIXED/ADJUSTABLE RATE NOTE       1L
Page 2

0915204366

**(B)  Default**

I will be in default if I do not pay the full amount as each monthly payment on the date it is due, or [if I fail to perform any of my promises or agreements under this Note or the Security Instrument, or (ii) any statement made in my application for this loan was materially false or misleading or (iii) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

**(C)  Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)  No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

**(E)  Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These costs may include, for example, reasonable attorneys' fees and court costs.

**1.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at any Borrower at 5645 W BEACH AVENUE, CHICAGO, IL 60651-2301, or a single alternate address if I give the Lender notice of my alternate address. I may give notice to Lender of a change in my address in writing or by mailing Lender's customer service telephone number provided on my billing statement. I may designate only one Mailing address at a time for notification purposes.

Except as permitted above, for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**2.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**3.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**4.  SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which I may lose the property which I hold in this Note. That Security Instrument describes how and under what terms I may be required to make immediate payment in full of all amounts I owe under the Note and states:

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law on the date of this Security Instrument.

If Lender exercises this option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all sums secured by this Security Instrument immediately, Lender may then at its option invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

C 374

(Page 5 of 6)

0014205186

### 1L. GOVERNING LAW; SEVERABILITY

This Note shall be governed by and construed under federal law and, where federal law does not (to-clude) mandated, another a traditional principle. Federal Law." In the event that any of the terms or provisions of this Note are regulated or rendered by a court of competent jurisdiction to be void, invalid or unenforceable, such provision shall affect only those provisions so invalidated or interpreted and shall not affect the remaining provisions of the Note.

### 11. CLERICAL ERRORS

In the event the Lender at any time discovers that this Note of the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such errors and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

### 12. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the same effect as the original for all purposes.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS

ELECTRONICALLY FILED
7/13/2016 11:55 AM
2016-CH-05738
PAGE 59 of 83

825842-8586-38-31   8415 (148-69-21)     FIXED PICK-A-PAYMENT NOTE      IL
Page 6

C 375

0045206356

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)

ROSEE TORRES



ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD008 (2004-03-1)     (AF1 (2004-03-1)       Page 15                    II
                      (B01 (2004-03-1))



BORROWER(S)' SPOUSE(S): The undersigned hereby joins in this Security Instrument for the sole purpose of encumbering, subordinating, conveying and/or waiving any current or potential interest in the Property. By signing below, the undersigned encumbers, subordinates, conveys and/or waives any and all rights, interests or claims in the Property, including, but not limited to, homestead, dower, marital or joint-occupancy rights. No personal liability under the Note is hereby incurred by the undersigned joining spouse.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S)' SPOUSE(S):

_____ (Seal)

NOEL TORRES          NON _BORROWING SPOUSE

Forgery

_____ (Seal)

_____ (Seal)

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD000 (2004-03-1)                    Page 16                    IL

[AL1 (2004-03-1)]

**FORM B**

**WELLS FARGO**

**OF FORGED ENDORSEMENT**

**FILED -'1**

2017 NOV 27 AM 10: 15

CIRCUIT COURT
COUNTY ILLINOIS
CHANCERY DIV.

e than one check to report, make copies of this form as necessary

de us with the following information about yourself.

**EE TORRES**

773-384-9122 CLERK

**R NAME (FIRST MI LAST)** | AREA CODE & DAYTIME TELEPHONE #

**3546 WEST BEACH AVENUE,**

**CHICAGO, IL 60651**

**EET ADDRESS**

011307961, 27028794, 0027028794, 45238888,
045238888, 0045238888, 45206356, 045206356

**ILLINOIS**

0045206356, 0483107462, 708/0483107462, etc.

YOUR DRIVER'S LICENSE OR ID # (INCLUDE ISSUING STATE) | WELLS FARGO ACCOUNT NUMBER ON WHICH FRAUD OCCURRED

Please provide us with the following information about the check.

| | | |
|---|---|---|
| **WORLD SAVINGS** | 02-07-2007 or 02-08-2007 | **UNKNOWN, BANK REFUSED DISCLOSURE** |
| CHECK ISSUED BY | ISSUE DATE | SERIAL NUMBER |
| **ROSEE TORRES** | | $204,000⁺(2-3) + |
| CHECK PAYABLE TO | | CHECK AMOUNT |

**WORLD SAVINGS OR ITS AGENTS UNKNOWN TO TORRES, WITHOUT CONSENT**

CHECK ENDORSED BY

By signing below, you are making the following declarations:

**I declare under penalty of perjury that:**

**LOAN/MTGE WAS CANCELLED 02-08-2007 BY
R. TORRES, DENIED BY WORLD PER LTR 02-19-07
NO CLOSING; I REC'D NO PROCEEDS OR FUNDS.**

- I did not sign, authorize, or otherwise approve of the endorsement on the check listed above.

- I did not receive any benefit or value from the proceeds of the e check listed above.

- I have not arranged with the person(s) who misused the check listed above to be reimbursed for any portion of the proceeds of the check.

- I will testify to the truth of these statements in any case which may result from this Declaration.

- All information I have provided in this document is true.

**CASE SETTLED IN CLASS ACTION : IN RE WACHOVIA
CORP "PICK-A-PAYMENT" MORTGAGE MARKETING &
SALES PRACTICE, # 5:09-md-02015 (USDC,ND-CALIF)**

PLACE NOTARY STAMP HERE*

"OFFICIAL SEAL"
MARIA T. GAUD
Notary Public State of Illinois
My Commission Expires April 23, 2011

NOTARY SIGNATURE

4-18-2011
DATE NOTARIZED

Chicago Cook County, IL
CITY & STATE WHERE SIGNED

*NOTARY STAMP REQUIRED FOR ALL FORGED
ENDORSEMENT AFFIDAVITS REGARDLESS OF LOCATION

A...r_QR

**EX. 1-C**

# EXHIBIT 2



**WORLD SAVINGS** NOV 23 PM 12: 13

CLERK

February 21 , 2007

Loan Number: 27028794, 4528888
45206356

Rosee Torres
3546 West Beach Avenue
Chicago, IL 60651-2201

Property Addresses: 3542 West Beach, 3550 West Beach, & 3546 West Beach Avenue
Chicago, IL 60651

We received your faxed Cancellation of February 8, 2007 and correspondence of February
11. It has been forwarded to our home office for review by legal counsel. There may be
a delay in response and research due to current, pending 3rd party litigation.

Enclosed is a copy of the Release you signed on November 15, 2004. Our position is that
the Release relieves World and its successors of any obligation or liability as to World
Savings prior thereto, including 3542 West Beach and 3550 West Beach, which were
never finalized. The matter is closed. All documents were destroyed after 3 months if no
action is taken, as a policy. There is no new application on file.

A copy of the settlement check for $29,421.63 has been sent to your attorney/s as it
could not be applied to any new purchases or transactions without your endorsement or
new application(s), as the above matters are closed and you were notified that you were
ineligible and did not qualify for new mortgage due to your 2006 income. There are no
prior existing loans, mortgages, indorsements or assignments. All funds received
thereafter will be applied to your IRA or refunded. You may fax any new information to
1-937-324-6616 or mail to World Savings, P. O. Box 7512, Springfield, Ohio 45501-7512
rather than to the San Antonio, TX or California branches.

To avoid foreclosure, you may be required to continue making monthly payments until all
litigation is resolved and/or all documents are transferred to the new financial institution
for a decision. However, all over-payments will be adjusted, refunded or placed in an IRA
or escrow account. Our research continues. You will be advised as to whether your
account was transferred to Wachovia, Citibank or Wells Fargo during the transitional
period.

Thank you for your patience. Please feel free to contact us if you have any further
questions.

Customer Service Department

cc: P. Eugene Graham, Esq.
Michael B. Cohen, Esq.

# EX. 2

# EXHIBIT 3

## World Savings

## FAX TRANSMISSION COVER PAGE

| | | |
|---|---|---|
| TO: | R. Eugene Pincham<br>Frederick Cohn | FROM: Customer Care & Recovery |
| FAX: | 1-312-641-1777 | FAX: 1-800-914-8166 |
| PHONE: | 1-312-641-0692 | PHONE: 1-800-642-0257 |

DATE: Thursday, April 12, 2007      PAGES w/cover: 03

RE: 3542 West Beach, 3546 West Beach, 3550 West Beach, Chicago, Illinois

We are in receipt of your Cancellations of April 1, 2007 and February 8, 2007, both reviewed by our legal department. It is determined that all original notes, mortgages assignments and endorsements from prior financial institutions for the above addresses have been destroyed and/or are moot as a result of the Release of November 15, 2004, settlement check and two Cancellations sent to your attorneys, R. Eugene Pincham and Frederick Cohn. Therefore, the case is closed as to all 2003, 2004 and 2007 applications by you and Noel Torres regarding 3542, 3546 and 3550 West Beach Avenue. No new applications or mortgages with the correct addresses are on file as all documents have been transferred to the new institution with corrections: 3542 and 3550 West Beach. You were also advised that your applications were denied as you were not eligible for a mortgage-loan due to your financial status. On January 31, you were also asked to submit new applications with the correct addresses and financial statements meeting minimal standards to qualify for eligibility, with co-signers if your financial status hasn't changed, and you failed to do so within 30 days. The matter was closed. There is no information on any closing which, according to our records, were cancelled by you and your attorneys prior to January 31, 2007 and February 8, 2007. World Savings is acting as a <u>mortgage servicer and collection agent</u> for the new institution, which appears to be Citibank. Meanwhile, all payments of $1,206.27 each month will be applied to your account 27028794 as "Miscellaneous Application Payment" until this matter is resolved. The new facility will contact you directly upon receiving and reviewing all records from the transfer and any over-payments made by you will be credited and returned or placed into an IRA account as you requested. We apologize for the misunderstanding and inconvenience caused and thank you for your patience as a valued customer.

This fax and attachment(s) is intended solely for the use of the addressee. It may contain information that is privileged, confidential and/or exempt from disclosure under applicable laws. If received in error please immediately notify the sender. Unless expressly stated this fax does not amend Company disclosures or contracts, and any unauthorized disclosure or distribution of this material is prohibited

You may opt out receiving future faxes from this fax number by emailing optout@worldsavings.com and in the email specify which fax number you wish to opt out

EX. 3

# EXHIBIT 4

Recording Requested By
GWSA, TRUSTEE FOR WORLD SAVINGS

**FILED** - 1

When Recorded Return To
GOLDEN WEST SAVINGS ASSOC
TRUSTEE FOR WORLD SAVINGS
P O BOX 34957
San Antonio, TX 78265-4957

2006 MAY 27

CIRCUIT COURT
COUNTY, ILL. IL.
CHANCERY DIV
CLER
DOROTHY BROWN

Doc#: 0708010018 Fee: $28.50
Eugene "Gene" Moore RHSP Fee:$10 00
Cook County Recorder of Deeds
Date 09/21/2007 09 56 AM Pg 1 of 3

### SATISFACTION

Golden West Savings Association Service Co # 27026794 "TORRES" Lender ID 010036 Cook, Illinois PIF 02/15/2007

FOR THE PROTECTION OF THE OWNER, THIS RELEASE SHALL BE FILED WITH THE RECORDER OR THE REGISTRAR OF TITLES IN WHOSE OFFICE THE MORTGAGE OR DEED OF TRUST WAS FILED.

KNOW ALL MEN BY THESE PRESENTS that WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK holder of a certain mortgage, made and executed by ROSEE TORRES, A MARRIED WOMAN, originally to WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK, in the County of Cook, and the State of Illinois, Dated 11/16/2004 Recorded. 11/29/2004 as Instrument No 0433441149, does hereby acknowledge that it has received full payment and satisfaction of the same, and in consideration thereof, does hereby cancel and discharge said mortgage

Legal: See Exhibit "A" Attached Hereto And By This Reference Made A Part Hereof

Assessor's/Tax ID No 16-02-208-030-0000

Property Address 3546. W. BEACH AVE. CHICAGO, IL 60651

IN WITNESS WHEREOF, the undersigned, by the officer duly authorized, has duly executed the foregoing instrument

WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK
On March 1st, 2007.

By _____
TRACEY WRIGHT, Assistant Vice-President

STATE OF Texas
COUNTY OF Bexar

On March 1st 2007. before me, JUAN G. IMPERIAL, a Notary Public in and for Bexar in the State of Texas, personally appeared TRACEY WRIGHT, Assistant Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal.

JUAN G IMPERIAL
Notary Expires: 09/14/2008

[SEAL: JUAN G IMPERIAL MY COMMISSION EXPIRES September 14, 2008]

(This area for notarial seal)

C 377
C 430

WH-WH-SOLD 030/1/2007 11 11 16 AM GOLDEN GOLD000000000000080522172 "LCOOK" 27025734 ILSTATE_MORT_REL "WH*WH*SOLD"

## EX. 4

WFTOR0003150

# EXHIBIT 5

CERTIFICATE OF RELEASE          FILED - 1

2017 MAY 27  AM 10: 16

CIRCUIT C...
CH ...VER...

DOROTHY BROWN          CLER

Date:          April 12, 2007

Order Number:

## RECORDER'S USE ONLY

1. Information concerning mortgage(s) is as follows:

**Mortgages dated November 18, 2004, Doc. #0433441148 and February 7, 2007, Doc. #0706417084 by Rose Torres to World Savings, Account #0027028784, #0045206356, #00483107462; ID16-02-208-030-0000 re 3546 West Beach Avenue, Chicago, Illinois. Satisfaction dated March 21, 2007, #0708010018**

2. The above referenced mortgage has been paid in accordance with the pay-off statement, and there is no objection from the mortgagee or the mortgage server or it successors in interest to the recording of this certificate of release.

3. The person executing this certificate of release is an officer or duly appointed agent of a title insurance company authorized and licensed to transact the business of insuring titles to interests in real property in this State pursuant to Section 30 of the Mortgage Certificate of Release Act.

4. This certificate of release is made on behalf of the mortgagor or a person who acquired title from the mortgagor to all or part of the property described in the mortgage.

5. The mortgagee or mortgage servicer provided a pay-off statement.

6. The property described in the mortgage is attached.

Protect 1 Title Insurance Company
By: Martha Tovias
Telephone No.: (708) 443-2000

State of Illinois
County of COOK
This Instrument was acknowledged before me on          by Martha Tovias as
(officer for/ agent of) Protect 1 Title Insurance Company.

_(Signature of Notary)_

OFFICIAL SEAL
EDGAR HERNANDEZ
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1-28-2008

Notary Public
My commission expires on
Prepared by: Martha Tovias
Address: 7222 W. Cermak Rd. North Riverside IL. 60546 Suite 705

Return to: Attn:          Docketing Statement

# EX. 5

2016 CH 5738

# EXHIBIT 6

CIRCUIT COURT

DOROTHY BROWN CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

IN RE WACHOVIA CORPORATION "PICK-A-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION.

Case No. 5:09-md-02015-JF

JUDGMENT

The Court having granted final approval of the class action settlement,

The action is HEREBY DISMISSED WITH PREJUDICE.

DATED: 5/17/2011

JEREMY FOGEL
United States District Judge

**EX. 6-A**

Pick-a-Payment Settlement Administrator
PO Box 2448
Faribault, MN 55021-9148
IMPORTANT SETTLEMENT DOCUMENT ENCLOSED

**FILED -*1**

*7417* **NOV 27** **AM 18: 15**

CIRCUIT COURT
COOK COUNTY
CIVIL DISTRICT...

—————— CLERK
DOROTHY BROWN

·············SINGLE-PIECE
ROSEE TORRES
3546 N BEACH AVE
CHICAGO IL 60651-2201

Re: *WACHOVIA CORP. "PICK-Á-PAYMENT" MORTGAGE MARKETING AND SALES PRACTICES LITIGATION*
*Case No.:* M-09-CV-2015-JF

The check below represents your settlement payment from the Wachovia Corp. "Pick-a-Payment" Settlement. Your payment was calculated according to the terms of the Settlement Agreement. If you have questions about the potential tax consequences your award, we recommend that you contact your tax advisor. If you have any questions regarding the information in this letter please visit the Settlement website at http://www.pickapaymentsettlement.com or send your questions along with a copy of this letter to: Pick-a-Payment Settlement Administrator, PO Box 2448, Faribault, MN 55021-9148.

PLEASE CASH THIS CHECK IMMEDIATELY. If your check is not cashed within ninety (90) days from the date on the check will become null and void and your right to receive the class settlement payment will be lost.

Sincerely,

Pick-a-Payment Settlement Administrator

**EX. 6-B**



WACHOVIA

March 14, 2008

Billing Address:

Rosee Torres
3546 West Beach Avenue
Chicago, IL 60651

Attn: ashley
Fax: (910) 256 - 1740
Esc/Ord No: Rosee Torres

Loan No. 0027028794, 0483107462,
0045206356, 045238888

Borrower: Rosee Torres, Individually

Property: 3542 W. Beach Ave., Chgo, IL
3550 W. Beach Ave., Chgo, IL

Phone: (773) 384-9122

************************************STATEMENT*****************************************

========================================================================

*MAIL CERTIFIED FUNDS ONLY TO 4101 WISEMAN BLVD. BLDG 203, SAN
ANTONIO, TX 78251   ATTN: PAYOFF DEPT.   TX1863 OR WIRE FUNDS TO: *****************
WACHOVIA MORTGAGE, ABA NO. ********   BENEFICIARY NO. *****************
ATTN:   PAYOFF DEPT.,   4101 WISSMAN BLVD.,   BLDG 203, SAN ANTONIO, TX
78251-4301. INCLUDES PAST AND FUTURE CREDIT PAYMENTS TO: TORRES
IRA ACCOUNT, c/o R. TORRES, 3546 WEST BEACH AVENUE, CHICAGO, IL 60651
WITH ___ AUTOMATIC DRAFTING FEATURES (ETS) - MUST BE CANCELLED AT
LEAST SIX BUSINESS DAYS PRIOR TO THE NEXT PAYMENT DUE DATE (EXCEPT
BIWEEKLY PAYMENTS WHICH CANNOT BE CANCELLED PENDING CURRENT
LITIGATION, SALES OR MERGERS OF SAID FINANCIAL INSTITUTIONS HEREIN,
ALL EXCESS FUNDS RECEIVED DUE TO OVERPAYMENTS AND/OR MORTGAGE
PAYMENTS RE 3546 WEST BEACH, IF ANY, INCLUDING BIWEEKLY DRAFTS, WILL
BE CREDITED TO IRA ACCOUNT. THIS STATEMENT SUPERCEDES ALL PRIOR
PAYOFF, LOAN AND INVESTMENT STATEMENTS ISSUED BY WORLD SAVINGS
GOLDEN WEST SAVINGS ASSN) AND WACHOVIA MORTGAGE.
========================================================================

FOR ANY FURTHER QUESTIONS, PLEASE CALL 800 - 642 -0257.

Loan Principal Balance -0-

Not Applicable – See World Savings Satisfaction 03-21-2007
& Certificate of Release 04-12-2007 re 02-07-2007 Note

-0-      Interest (To be determined – 12-2004 to present))
$38.00   Recording Fee



**EX. 6-C**

STOXX

# PULSE ONLINE

Business

Related: PE3_LAT94

# Wells Fargo to settle lawsuit over pick-a-payment loans

* Settlement includes a $50 million fund

* Up to $600 million to be available for loan mods-Wells

* Deal covers hundreds of thousands of borrowers

By Dan Levine

SAN FRANCISCO, Dec 14 Wells Fargo (WFC.N) has agreed to settle a class-action lawsuit for at least $50 million involving so-called 'pick-a-payment' home loans issued by its Wachovia unit, according to a court document.

Pick-a-payment loans, which grew in popularity in the housing boom, offered borrowers the option to pay less than the interest due on the their loan. Any unpaid interest was then added to the balance of the loan.

Plaintiffs argued this product violated federal truth in lending laws because the loan documents failed to adequately disclose the potential for the loan balance to actually increase over time.

The proposed settlement, outlined in a California federal court filing last week, would cover "hundreds of thousands of borrowers" who entered into pick-a-payment mortgages with Wachovia and World Savings Bank from August 2003 through 2008.

Wachovia bought World Savings in 2006 and was itself acquired by Wells Fargo at the end of 2008.

The settlement does not include any admission of wrongdoing. Wells Fargo said in a statement on Tuesday.

"Since our merger, we have been actively working with Wachovia pick-a-payment customers on modification options," said Mike Heid, co-president of Wells Fargo Home Mortgage, the bank's home loan unit.

In addition to the $50 million settlement fund, Wells Fargo has agreed to offer loan

default, and others who are in imminent default.

Wells Fargo estimates that as much as $600 million in modification benefits may be made available to pick-a-payment customers, which has already been figured into the bank's third-quarter results, it said.

The bank has already forgiven $3.5 billion in principal for pick-a-payment customers through Sept. 30. It said.



Editor's choice

2.5% HARP Refinance Loan

No Appraisal. No MAX LTV. 2.7 APP*. Call us! New Rate Payment 30 Secs:

Irs Tax Settlements

Guaranteed Business Loans

2.89% HARP Home Refinance



5-17-2011
IN RE LUAChoun
5:09 mD-6 2015
USDC-CALIFO
San Jose DIV.

# EXHIBIT 7



**NEWS NOW**



# 88°
Marlin, TX

Search

# Wells Fargo: Hundreds lost homes due to computer glitch

*Published: Sunday, August 5th 2018, 7:16 pm CDT*
*Updated: Sunday, August 5th 2018, 7:21 pm CDT*

(CNN) - Wells Fargo said hundreds of customers lost their homes because of a computer glitch.

The issue came to light in a regulatory filing showing that software mistakenly denied about 625 homeowners mortgage modifications.

In about 400 cases, the customers were foreclosed upon.

The computer error was fixed in October 2015, but it had been going on since April 2010.

Wells Fargo said it has set aside $8 million to compensate customers affected by the mistake. The bank did not respond to an inquiry from CNN Money on Saturday.

Wells Fargo has been mired in a series of scandals in recent years that have cost the firm billions and left it facing a string of lawsuits and investigations.

*Copyright 2018 CNN. All rights reserved.*

## SPONSORED STORIES

*Recommended by*



Do You Have These Rheumatoid Arthritis Symptoms?



Chicago, Illinois: This Tiny, Unknown Company Is Disrupting A $200 Billion Industry



[Pics] This Mama Elephant Gave Birth To This And It Took Everyone By Surprise



4 Worst Blood Pressure Meds

**USDC BRIEF DKT #15**
**EXHBIT #22-A**
# EX. 7 ,PG.1



# Wells Fargo blames computer for customers losing homes

BY EMILY BIRNBAUM · 08/05/18 01:45 PM EDT

**12,684** SHARES                    SHARE          TWEET          PL

Just In...

**West Virginia set to allow smartphone voting for those serving overseas**
CAMPAIGN — 6M 15S AGO

**LeBron James to produce documentary series 'Shut Up and Dribble' for Showtime**
IN THE KNOW — 25M 50S AGO

**Rosie O'Donnell leads anti-Trump Broadway sing-along at the White House**
ADMINISTRATION — 1H 4M AGO

**Judge appoints 'firewall' counsel to review Mueller documents for sensitive information**
NATIONAL SECURITY — 2H 39M AGO

**Study warns of looming potential for runaway global warming**
ENERGY & ENVIRONMENT — 3H 2M AGO

**Protesters block entrance to prison company that runs migrant detention facilities**
BLOG BRIEFING ROOM — 3H 29M AGO

**Protesters criticize DC mayor's 'silence' over immigration raids**
NEWS — 3H 31M AGO



© Getty Images

Wells Fargo is blaming a computer glitch for more than 400 customers losing their homes between 2010 and 2015.

The bank revealed in regulatory filings last week that the technological error resulted in 625 customers being denied loan modifications, and about 400 costumers having their houses foreclosed on, CNN Money reported on Friday.

The filing says the bank has set aside $8 million to compensate the affected customers, it added.

Wells Fargo apologized for the error and said in a statement that it is "providing remediation" to customers whose mortgages were affected, according to CNN.

The Treasury Department set up a program in 2009 to help Americans struggling to pay their mortgages, offering them the opportunity to apply for loan modifications, the network noted, adding that the computer error rejected applications from 625 Wells Fargo customers.
A bank spokesperson told CNN that there is "not a clear, direct cause and effect relationship" between the error and foreclosures, but said some customers who were denied loan modifications lost their homes.

Multiple government agencies are also probing Wells Fargo for its financing of low-income housing developments, Reuters reported.

USDC BRIEF DKT #15
EXHIBIT #22-B
EX. 7 , PG.2

CBS News / CBS Evening News / CBS This Morning / 48 Hours / 60 Minutes / Sunday Morning / Face The Nation / CBSN Originals    Log In  Search

Markets  Money  Work  Small Business  Retirement  Tech  Trending  Video

Cheap $19 Car Insurance

Find Multiple Discounts & Rates as Low as $19 Month. Residents in Your Area Only.

CBS NEWS / January 18, 2018, 3:12 AM

# Wells Fargo bill payment glitch emptying some accounts: Report

f Share / 🐦 Tweet / Reddit / Flipboard / Email

An apparent glitch with the Wells Fargo online bill payment system led to some payments being processed twice late Wednesday and even to some accounts being emptied out by the double processing, reports the Austin American-Statesman.

The issue resulted in the bank's customer service lines being jammed, the newspaper says.

Wells Fargo took to Twitter to acknowledge it was having problems:

**Wells Fargo**
@WellsFargo

Some customers may be having an issue with their Bill Pay transactions. We are working to fix the issue and resolve this tonight. Thanks for your patience.
9:41 PM - Jan 17, 2018

47    120 people are talking about this

In some cases, the American-Statesman says, customers' balances were reduced to zero -- which could trigger overdraft protection fees. Some customers got emails saying their checking accounts had nothing in them.

"Customers who waited out the hour-plus wait to reach a customer service representative Wednesday night were being told that their accounts would be fixed overnight," the newspaper says.

Unhappy customers were flocking to social media to vent their frustrations.

© 2018 CBS Interactive Inc. All Rights Reserved.

f Share / 🐦 Tweet / Reddit / Flipboard / Email

Sponsored Links

**13 Retirement Investing Blunders to Avoid in Your 60s**
Fisher Investments

Drivers who switch save an average of $668 on car insurance.

## Market Data

Enter Ticker Symbol or Company Name    Q

DOW: Aug 06, 2018



| Symbol | Last | Change | % Change |
|--------|------|--------|----------|
| DOW | 25,502.18 | +39.60 | +0.16% |
| NASDAQ | 7,859.68 | +47.66 | +0.61% |
| S&P 500 | 2,850.40 | +10.05 | +0.35% |



insure.com

Stop Over Paying For Your Car Insurance. See How You Can Lower Your Monthly Payment Now.

By Comparing Rates, Applying For Discounts & Shopping Around, You Can Save Up To $540/Year

Watch CBSN Live

**EX. 7**

www.cbsnews.com/news/wells-fargo-bill-payment-glitch-emptying-some-accounts-report/

1-4



THE INDUSTRY

# Wells Fargo Says It Foreclosed on Hundreds of Homes After a Computer Glitch

By AARON MAK
AUG 06, 2018 • 12:08 PM

TWEET

SHARE

COMMENT



Wells Fargo has set aside $8 million to compensate the 625 customers.
Justin Sullivan/Getty Images

**USDC BRIEF DKT #15**
**EXHIBIT #22-D**

# EX. 7 , PG. 4-5

Wells Fargo disclosed in a regulatory filing on Friday that 400 customers had their homes foreclosed upon after the bank incorrectly denied or neglected to offer them loan modifications because of a

Advertisement



▷ ×

**Cheap Car Insurance - $19**
Insure.com

Easily Use Our Online Tools to
Customize Your Search and Find
Multiple Discounts at Once



# Wells Fargo apologizes after hundreds of customers lose their homes due to 'computer glitch'

The big bank says "sorry" a lot, but this is just the latest of its many, many scandals to have potentially destroyed the lives of its customers.

DANIELLE MCLEAN 🐦
AUG 6, 2018, 2:17 PM



USDC BRIEFDKT #15
EXHIBIT #22-E
EX. 7 , PG. 6

SIGNAGE AT THE HEADQUARTERS OF WELLS FARGO CAPITAL FINANCE, THE COMMERCIAL BANKING DIVISION OF WELLS FARGO BANK, IN THE FINANCIAL DISTRICT NEIGHBORHOOD OF SAN FRANCISCO, CALIFORNIA, SEPTEMBER 26, 2016. (PHOTO VIA SMITH COLLECTION GADO/GETTY IMAGES)

Wells Fargo is making things right for its customers, building a better banking experience, identifying and fixing its problems, and becoming better and stronger each day. This is what the company's website says, anyway.

However, Wells Fargo's actual banking practices continue to be at odds with the increasingly cheerful and apologetic tone of their advertising copy. This week, a new regulatory filing revealed that hundreds of customers — 625 in total — were denied loans and, in many cases, foreclosed upon because a company computer glitch marked "certain accounts" between April 2010 and October 2015 as undergoing the foreclosure process. The company said in the filing that it set aside $8 million to pay off those affected. It later issued a statement saying it was "very sorry," according to CNN.

 **Matthew Yglesias**
@mattyglesias

In ten years, Wells Fargo apology ads are going to be 3% of the US economy.

**CNN** @CNN
Wells Fargo says hundreds of customers lost their homes because of a computer glitch cnn.it/2M4fp2u

JUSTICE NEWS

**Department of Justice**

Office of Public Affairs

FOR IMMEDIATE RELEASE

Wednesday, December 4, 2013

# Federal Agents Arrest Operators of Loan Modification Scam That Targeted Struggling Homeowners

Federal agents arrested yesterday Bryan D'Antonio, 47, of Brea, Calif., and Charles Wayne Farris, 53, of Aliso Viejo, Calif., for operating the Rodis Law Group and America's Law Group, businesses that allegedly offered bogus loan modification assistance to struggling homeowners. Attorney Ronald Rodis, 49, of Irvine, Calif., surrendered today to federal agents on charges alleging that he participated in, and lent his name and the law license he formerly possessed to, the fraudulent operation. All three defendants were named in a federal indictment unsealed yesterday following an investigation by the FBI and IRS-Criminal Investigation.

According to the indictment, as a result of the scheme run by D'Antonio, Farris and Rodis, more than 1,800 financially distressed homeowners lost a total of at least $12 million in fees they paid to the companies. Many homeowners also lost their homes to foreclosure. During a nine month period that began in October 2008, the Rodis Law Group and America's Law Group allegedly defrauded distressed homeowners by making false promises and guarantees regarding the companies' ability to negotiate loan modifications from the homeowners' mortgage lenders, falsely representing that a "team of attorneys" would represent the homeowners and advising homeowners to cease making their mortgage payments.

"These arrests send a strong message to those who would prey on vulnerable homeowners during these tough financial times," said Assistant Attorney General for the Justice Department's Civil Division Stuart F. Delery. "If you defraud homeowners, you will be found and brought to justice."

The Rodis Law Group, and its successor company, America's Law Group, allegedly advertised loan modification assistance on radio stations nationwide. According to the indictment, many of these radio advertisements featured Rodis' voice telling homeowners that a "team of experienced attorneys," who were "highly skilled in negotiating lower interest rates and even lowering your principal balance," would negotiate with mortgage lenders. Sales staff hired and trained by Farris and D'Antonio allegedly told interested homeowners that Rodis Law Group was "100% successful," "routinely lowered monthly payments" and obtained reduced principal balances. According to the indictment, once the defendants and their co-conspirators convinced homeowners to pay a fee of several thousand dollars, little to no effort was made to obtain loan modifications. After making their payments, homeowners who tried to get updates on the status of their cases were often unable to contact anyone at either company.

The indictment further alleges that D'Antonio committed these crimes after having been convicted of mail and wire fraud for his role in a previous telemarketing scheme. The previous scheme resulted in a civil case by the Federal Trade Commission and ultimately a court order, entered in 2001, which permanently banned D'Antonio from participating in future telemarketing operations. The indictment in this case alleges that D'Antonio committed criminal contempt of

**EX. 7**

P. 7

J18 . Federal Agents Arrest Operators of Loan Modification Scam That Targeted Struggling Homeowners | OPA | Department of Justice

court by directing the telemarketing activities of Rodis Law Group and America's Law Group and by misrepresenting the services they provided.

"Posing as successful lawyers, these defendants offered struggling homeowners false hopes and bogus promises of quality legal representation," said U.S. Attorney for the Central District of California André Birotte Jr. "The market offering loan modifications is rife with fraud, which is why we have redoubled our efforts to investigate and prosecute those who engage in financial crimes that target distressed homeowners."

"The unconscionable act of scamming homeowners already facing foreclosure is far too common," said Assistant Director in Charge of the FBI's Los Angeles Field Office Bill Lewis. "This indictment should send a clear message to anyone contemplating similar crimes, and should also remind potential victims to be cautious before paying fees to those offering financial rescue, regardless of whether the solicitor holds a law degree."

D'Antonio, Farris and Rodis are each charged with 10 felony counts – nine counts of wire fraud and one count of conspiracy. Each of these counts carries a statutory maximum penalty of 20 years' imprisonment. In addition, D'Antonio is charged with 13 counts of criminal contempt for violating the 2001 court order. Criminal contempt of court has no statutory maximum penalty.

This indictment was brought in coordination with the President's Financial Fraud Enforcement Task Force's Mortgage Fraud Working Group. The task force was established to wage an aggressive, coordinated and proactive effort to investigate and prosecute financial crimes. With more than 20 federal agencies, 94 U.S. attorneys' offices and state and local partners, it's the broadest coalition of law enforcement, investigatory and regulatory agencies ever assembled to combat fraud. Since its formation, the task force has made great strides in facilitating increased investigation and prosecution of financial crimes; enhancing coordination and cooperation among federal, state and local authorities; addressing discrimination in the lending and financial markets and conducting outreach to the public, victims, financial institutions and other organizations. Over the past three fiscal years, the Justice Department has filed nearly 10,000 financial fraud cases against nearly 15,000 defendants including more than 2,900 mortgage fraud defendants. For more information on the task force, please visit www.StopFraud.gov

An indictment contains allegations that a defendant has committed a crime. Every defendant is presumed innocent until and unless proven guilty in court.

**Topic(s):**
Consumer Protection
StopFraud

**Component(s):**
Civil Division

**Press Release Number:**
13-1277

*Updated October 22, 2014*

# EXHIBIT 8

JUSTICE NEWS

### Department of Justice

Office of Public Affairs

FOR IMMEDIATE RELEASE

Tuesday, May 31, 2011

## Justice Department Reaches Americans with Disabilities Act Settlement with Wells Fargo

WASHINGTON – The Justice Department announced today a comprehensive settlement agreement under the Americans with Disabilities Act (ADA) with Wells Fargo & Company to ensure equal access for individuals with disabilities to Wells Fargo's services nationwide, including its nearly 10,000 retail banking, brokerage and mortgage stores, over 12,000 ATMs, and its telephone and website services.

The agreement resolves numerous ADA complaints filed by individuals who are deaf, are hard of hearing or have speech disabilities who allege that Wells Fargo would not do business with them over the phone using a telecommunications relay service. Instead, the individuals were directed to call a TTY/TDD line that asked them to leave a message, which went unanswered. Wells Fargo started addressing these customers' concerns before the Justice Department investigation began. Once the department opened an investigation, Wells Fargo worked cooperatively to achieve a comprehensive settlement addressing all ADA issues in its retail banking and financial services.

"Individuals who have disabilities must not be denied equal access to the services offered by financial institutions simply because of their disability. Wells Fargo has shown that it is committed to equal access and effective communication with its customers who have disabilities," said Thomas E. Perez, Assistant Attorney General for the Civil Rights Division. "The department is aware that other major financial institutions are refusing to communicate with individuals with disabilities who use relay services to communicate by telephone. These refusals are discrimination, and other financial institutions must follow Wells Fargo's example and accept relay calls immediately."

"The U.S. Attorney's Office is committed to working with the Civil Rights Division to help ensure that businesses in this district fully comply with the ADA," said Melinda Haag, U.S. Attorney for the Northern District of California, which is where Wells Fargo is headquartered.

Wells Fargo will pay up to $16 million to compensate individuals harmed by certain violations of Title III of the ADA. The department will be administering a claims process to distribute these funds. Individuals who believe they were harmed by Wells Fargo's failure to comply with ADA requirements may get information about filing a claim by sending an email to wfclaims@usdoj.gov or by calling 1-866-708-1273 (voice) or 1-866-544-5309 (TTY). Information on the claims process is also available on the ADA home page at www.ada.gov .

Wells Fargo will also pay a $55,000 civil penalty to the United States. In addition, Wells Fargo affirms its commitment to advancing the interests of individuals with disabilities by paying a total of $1 million in charitable donations to non-profit organizations that will assist veterans with disabilities resulting from injuries sustained while serving in Iraq or Afghanistan to live independently in the community.

USDA - N Cal 1

**EX. 8**

Finally, the agreement requires Wells Fargo to take the following steps to improve access for customers with disabilities:

* Remove physical barriers to access, as required, at its retail stores across the nation and remedy all other instances of discrimination under Title III of the ADA that are identified during the claims process.

* Provide appropriate auxiliary aids and services, including qualified sign language interpreters, computer-assisted real time transcription, qualified readers and documents in Braille, large print, and other alternate formats to persons with disabilities when necessary to ensure effective communication throughout its financial services and programs.

* Adopt and enforce a policy on effective communication with individuals who are deaf, are hard of hearing, are blind or have low vision for all Wells Fargo retail stores and financial services nationwide, post a summary of the policy on its website and distribute the policy to current and new employees and contractors.

* Accept calls made through a relay service operator by customers who are deaf, are hard of hearing or have speech disabilities on an equivalent basis to calls from other customers. This includes eliminating special security provisions applied to relay calls and using the same caller verification procedures whether or not a customer uses a relay service.

* Maintain staffing of phone lines dedicated to TTYs / TDDs, wherever provided, on a basis equivalent to telephone lines that are not dedicated to TTYs / TDDs.

* Ensure that its ATMs and websites are accessible to individuals with disabilities.

* Establish a toll-free ADA comment/complaint line so customers with disabilities have an easy avenue for alerting Wells Fargo to concerns about disability-related problems accessing goods, services and facilities.

* Hire a full-time national ADA coordinator to coordinate Wells Fargo's efforts to comply with its responsibilities under the ADA and this agreement, including the investigation of ADA complaints received on its ADA comment/complaint line.

* Provide staff training on the ADA and Wells Fargo's obligations to provide effective communication to individuals with disabilities.

* Post and maintain in a conspicuous location in all Wells Fargo banking stores a notice stating that individuals with disabilities have a right under the ADA to request a sign language or oral interpreter or other auxiliary aids or services.

Title III of the ADA prohibits discrimination against individuals with disabilities by businesses that serve the public. Among other things, the ADA requires financial institutions, accountants, lawyers, doctors and other businesses to provide auxiliary aids and services that are necessary for effective communication. For individuals who are deaf or hard of hearing, auxiliary aids include qualified sign language or oral interpreters, use of relay services, computer-assisted real time transcription, and, for simple communications, the exchange of written notes. For individuals who are blind or have low vision, auxiliary aids include qualified readers, assistance in filling out forms and written materials provided in alternate

formats, such as Braille, large print, audio recordings or accessible electronic formats such as email or HTML.

Those interested in finding out more about this agreement or businesses' obligations under the ADA may call the Justice Department's toll-free ADA Information Line at (800) 514-0301 or (800) 514-0383 (TDD), or access its ADA website at www.ada.gov. ADA complaints may be filed by email to ada.complaint@usdoj.gov. For the settlement and fact sheet on this announcement, please visit www.ada.gov/wells_fargo/.

**Component(s):**
Civil Rights Division
Civil Rights - Disability Rights Section

**Press Release Number:**
11-703

*Updated August 10, 2015*

# Settlement Agreement between
# the United States and Wells Fargo & Company

On May 31, 2011, the Justice Department's Disability Rights Section and Office of the United States Attorney for the Northern District of California entered in a comprehensive settlement agreement with Wells Fargo & Company. Under the Agreement, Wells Fargo will pay up to $16 million to compensate individuals who experienced discrimination in violation of Title III of the Americans with Disabilities Act (ADA) when trying to call Wells Fargo, access Wells Fargo's services, or visit one of Wells Fargo's retail stores.

- How to file a claim for compensation from Wells Fargo
- Settlement Agreement between United States and Wells Fargo
- Fact Sheet about Agreement
- Press Release

Wells Fargo owns or operates almost 10,000 retail stores and 12,000 ATMs located throughout the United States. Wells Fargo offers a wide variety of financial services, including personal and commercial banking, mortgages, brokerage, insurance, and investments. The Department initiated its investigation after receiving complaints under Title III of the ADA filed by numerous individuals who are deaf, are hard of hearing, or have speech disabilities. The complainants alleged that Wells Fargo would not do business with them over the phone using a telecommunications relay service. Instead, the individuals were directed to call a TTY/TDD line that asked them to leave a message, which went unanswered. The Department determined that these actions violated the ADA. The Department also received a variety of other complaints alleging ADA violations by Wells Fargo, including the failure to provide financial documents to people who are blind or have low vision in alternate formats (e.g., Braille or large print), the failure to provide appropriate auxiliary aids and services upon request for in-person meetings between Wells Fargo staff and individuals who are deaf, and the failure to remove barriers to access for individuals with mobility disabilities. The settlement agreement provides for resolution of all complaints alleging violation of the ADA in connection with Wells Fargo's financial services and retail facilities based on events occurring before May 31, 2011.

The settlement agreement requires Wells Fargo to accept calls made through a relay service by customers who are deaf, are hard of hearing, or have speech disabilities; remove physical barriers to access identified at its retail stores; provide appropriate auxiliary aids and services, including qualified sign language or oral interpreters, computer-assisted real-time transcription, qualified readers, and documents in alternate formats (Braille, large print, audio format, accessible electronic format) to persons with disabilities when necessary to ensure effective communication throughout its financial services and programs; ensure that its ATMs and websites are accessible to individuals with disabilities; and remedy all other instances of discrimination - including architectural barriers and operational issues -- under Title III of the ADA that are identified during the claims process. In addition, the agreement requires Wells Fargo to make $1 million in charitable donations to non-profit organizations that will assist veterans with disabilities caused by injuries sustained while serving in Iraq or Afghanistan to live independently in the community. Wells Fargo will also pay a $55,000 civil penalty to the United States Treasury.

---

updated May 31, 2011

1 800 - 514- 0361   Title. III. of ADA

# EXHIBIT 9

Patient: TORRES,NOEL
Account No: N023964810
Unit No: M391535
Location: TELEMETRY MED SURG
Physician: Kandala MD,Rajiv
Date: 08/28/19

HOSPITAL

"...Committed to your health"

## Chest Pain

Discharged 09-07-2019

## WHAT YOU NEED TO KNOW:

Chest pain can be caused by a range of conditions, from not serious to life-threatening. It may be caused by a heart attack or a blood clot in your lungs. Sometimes chest pain or pressure is caused by poor blood flow to your heart (angina). Infection, inflammation, or a fracture in the bones or cartilage in your chest can cause pain or discomfort. Chest pain can also be a symptom of a digestive problem, such as acid reflux or a stomach ulcer. An anxiety attack or a strong emotion such as anger can also cause chest pain. It is important to follow up with your healthcare provider to find the cause of your chest pain.

## DISCHARGE INSTRUCTIONS:

### Call 911 if:
- You have any of the following signs of a heart attack:
  - Squeezing, pressure, or pain in your chest that lasts longer than 5 minutes or returns
  - Discomfort or pain in your back, neck, jaw, stomach, or arm
  - Trouble breathing
  - Nausea or vomiting
  - Lightheadedness or a sudden cold sweat, especially with chest pain or trouble breathing

## Seek care immediately if:
- You have chest discomfort that gets worse, even with medicine.
- You cough or vomit blood.
- Your bowel movements are black or bloody.
- You cannot stop vomiting, or it hurts to swallow.

## EX. 9

# EXHIBIT 10

# New Lawsuit Alleges That Wells Fargo Has a Manual for Mass Fabrication of Foreclosure Documents

Monday, 24 March 2014 10:49

*By Yves Smith (/author/itemlist/user/46264), Naked Capitalism (http://www.nakedcapitalism.com/2014/03/new-lawsuit-alleges-wells-manual-mass-fabrication-foreclosure-documents.html?*
*utm_source=feedburner&utm_medium=email&utm_campaign=Feed%3A+NakedCapitalism+%28naked+capitalism%29) | News Analysis*

(/)

5K · 3 · 10                                          documents?tmpl=component&print=1)

*Journalism with real independence and integrity is a rare thing. Truthout relies on reader donations - click here to make a tax-deductible contribution and support our work.*
*^ +tps://members.truth-out.org/donate)*

*Also see: As Wells Fargo Is Accused of Fabricating Foreclosure Papers, Will Banks Keep Escaping Prosecution? (http://truth-out.org/news/item/22658-as-wells-fargo-is-accused-of-fabricating-foreclosure-papers-will-banks-keep-escaping-prosecution)*

Recall that some of the most damaging documents released by Edward Snowden were NSA manuals. They discuss in detail how certain abuses are performed and



(Photo: Clint McMahon

**EX 10**

WILL PRODUCE WITH BRIEF

# EXHIBIT 11

Return Date: No return date scheduled
Hearing Date: No hearing scheduled
Courtroom Number: No hearing scheduled
Location: No hearing scheduled

DOROTHY BROWN
CIRCUIT CLERK
COOK COUNTY, IL
2016CH05738

FILED DATE: 4/8/2019 9:57 PM   2016CH05738

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
CHANCERY DIVISION

| Wells Fargo Bank NA | Case No.   16CH5738 |
|---|---|
| v | In Re: |
| Torres, et al. . | 3546 W. Beach, Chicago, IL. (16-02-208-030-0000) |

## VERIFIED MOTION TO VACATE 2.19.19 ORDER OF POSSESSION AND TO VOID 4.3.19 DEED FOR LACK OF SUBJECT MATTER JURISDICTION

NOW COMES DEFENDANTS, by and through Defendants' undersigned Counsel, and respectfully MOVE this Court to Vacate the 2.19.19 Order of Possession issued by this Court for lack of jurisdiction due in part to a bad deed, and state in support:

1. After preliminary due diligence by undersigned (not only as Attorney fo Record but also as Chicago Title Agent familiar with Title Examination), Undersigned verifies that the attached deed, recorded 4.3.19 and assumed to be the vehicle transferring title to whomever intends to enforce the 2.19.19 Order of Possession, is invalid on its face.

2. To wit, there is no such known entity as "Mr. Capital Group LLC" found on file at the Illinois Secretary of State nor on Google (there is a "MR Capital Group" mortgage company out of New Jersey that appears to be unrelated to this matter at this point).

3. Given that the deed cannot be correct, the undersigned, based on this preliminary exam, could not advise a client/insurer to insure title as Undersigned Title cannot rest with the entity claiming under the Deed and Order of Possession, and the Order is itself Void therefore and

Page 1 of 2



EX.11

FILED DATE: 4/8/2019 9:57 PM   2016CH05738

thereby (No Res to Attach to in the name of titled "owner").

4.  Similarly, there is no such entity listed at the address listed on the deed, 1005 W. Lake Street, Addison, Illinois, which appears to be a financial firm of a different name.

Wherefor, the Deed of Record being invalid on its face and ineffective to transfer anything, and the 2.19.19 Order void for the same reason, Defendants respectfully MOVE this Court to Vacate the 2.19.19 Order and Void the 4.3.19 recorded deed, and for leave to file a motion to sanctions and attorneys fees. If this Court will not grant that relief, undersigned respectfully requests a finding that the denial is appealable as if a final order in the case.


Respectfully Submitted By: s/ *Felipe Gomez, Esq.* Date: 4.8.19

*FOR DEFENDANTS*
FELIPE GOMEZ, ESQ.
LAW OFFICE OF FELIPE GOMEZ, ESQ.
3024 N. ASHLAND AVE #577870
CHICAGO, IL 60657
PH312-509.2071
email: 131 2.509.2071@gmail.com
ILARDC 6197210


## VERFIFCATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned Felipe Gomez, Esq. certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Verified, Certified and Sworn as if Under Oath By: s/ *Felipe Gomez, Esq.*
Date: 4.8.19
*FOR DEFENDANTS*
FELIPE GOMEZ, ESQ.
LAW OFFICE OF FELIPE GOMEZ, ESQ.
3024 N. ASHLAND AVE #577870
CHICAGO, IL 60657
PH312-509.2071
email: 131 2.509.2071@gmail.com
ILARDC 6197210

CERTIFICATE OF RELEASE

FILED - '1

2017 MAY 27 AM 10: 16

CIRCUIT COURT
COOK
CH RECERT...

DOROTHY BROWN — CLERK

Date: April 12, 2007

Order Number:

RECORDER'S USE ONLY

1. Information concerning mortgage(s) is as follows:

Mortgages dated November 18, 2004, Doc. #0433441148 and February 7, 2007, Doc. #0706417084 by Rose Torres to World Savings, Account #0027028784, #0045206356, #00483107462; ID16-02-208-030-0000 re 3546 West Beach Avenue, Chicago, Illinois. Satisfaction dated March 21, 2007, #0708010018

2. The above referenced mortgage has been paid in accordance with the pay-off statement, and there is no objection from the mortgagee or the mortgage server or it successors in interest to the recording of this certificate of release.

3. The person executing this certificate of release is an officer or duly appointed agent of a title insurance company authorized and licensed to transact the business of insuring titles to interests in real property in this State pursuant to Section 30 of the Mortgage Certificate of Release Act.

4. This certificate of release is made on behalf of the mortgagor or a person who acquired title from the mortgagor to all or part of the property described in the mortgage.

5. The mortgagee or mortgage servicer provided a pay-off statement.

6. The property described in the mortgage is attached.

Protect 1 Title Insurance Company
By: Martha Tovias
Telephone No.: (708) 443-2000

State of Illinois
County of COOK
This Instrument was acknowledged before me on
(officer for/ agent of) Protect 1 Title Insurance Company.

by Martha Tovias as

(Signature of Notary)

OFFICIAL SEAL
EDGAR HERNANDEZ
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 1-28-2008

Notary Public
My commission expires on
Prepared by: Martha Tovias
Address: 7222 W. Cermak Rd. North Riverside IL. 60546 Suite 705
Return to: Attn:

Docketing Statement
EX. B

2016 CH 5738

# EXHIBIT 12

Amended Homeowners Policy Declarations
Policy number: **912 942 462**
Policy effective date: October 14, 2018

## Rating Information* (continued)

Interior wall height - 8 ft, 100%

**Fire protection details:**
Fire department subscription - no          250 ft. to fire hydrant
1 mile to fire department

**Roof surface material type:**
Composition
• 100% asphalt / fiberglass shingle

*This is a partial list of property details. If the interior of your property includes custom construction, finishes, buildup, specialties or systems, please contact your Allstate representative for a complete description of additional property details.*

## Mortgagee

None

## Additional Interested Party

None

## Coverage detail for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
| --- | --- | --- |
| Dwelling Protection - with Building Structure Reimbursement Extended Limits | $354,455 | • $2,500 All peril |
| Other Structures Protection | $35,446 | • $2,500 All peril |
| Personal Property Protection - Reimbursement Provision | $104,564 | • $2,500 All peril |
| Additional Living Expense | Up to 12 months not to exceed $35,446 | |
| Family Liability Protection | $300,000 each occurrence | |
| Guest Medical Protection | $5,000 each person | |
| Building Codes | Not purchased* | |
| Water Back-Up | Not purchased* | |

**EX. 12**

065 070 012



# Illinois suspends business with Wells Fargo

**Mike Snider, USA TODAY**   Published 8:36 a.m. ET Oct. 3, 2016 | Updated 8:08 p.m. ET Oct. 3, 2016



*(Photo: 2014 photo by Ben Margot, AP)*

Wells Fargo (WFC (https://www.usatoday.com/money/lookup/stocks/WFC/)) is losing another big business customer: The state of Illinois.

Illinois Treasurer Michael Frerichs said Monday his office is suspending its annual $30 billion in investment activity with Wells Fargo for at least one year. The office oversees more than $1 trillion in transactions annually, Frerichs says, and Wells Fargo stands to lose "millions of dollars" in investment fees from the action.

"Wells Fargo is a big financial player in Illinois, and I hope to send the message that their unscrupulous practices are not welcomed and will not be tolerated," Frerichs said during a news conference.

Late Monday, Wells Fargo spokesman Gabriel Boehmer disputed the impact of the state's decision.

"Respectfully, the actual amount in lost revenue for the company from business conducted with the Illinois Treasurer's office is approximately $50,000 per year," Boehmer said.

Wells Fargo claws $41M from CEO
(https://www.usatoday.com/story/money/markets/2016/09/27/wells-fargo-pay-clawback-5-people-decide/91165192/)

The repercussions are the result of Wells Fargo's agreement last month to a $185 million civil settlement for restitution and fines after admitting that employees had opened accounts not authorized by customers. Wells Fargo says it has reimbursed fees incurred and fired more than 5,000 employees.

11/16/2018 (https://www.usatoday.com/story/money/markets.2016/09/30/1341m-wells-fargos- Illinois suspends business with Wells Fargo
ceos-retirement-payout-even-bigger-than-thought/91293136/)

Frerichs' action follows the proposal Friday from two Chicago aldermen that the city ban doing business with Wells Fargo for the next two years.

The state will also audit all other business it does with Wells Fargo, Frerichs said.

"We certainly understand the concerns that have been raised," Wells Fargo said in a statement. "We are very sorry and take full responsibility for the incidents in our retail bank. We have already taken important steps, and will continue to do so, to address these issues and rebuild the state's and city's trust."

Wells Fargo's government & institutional banking division, separate from the retail bank, has worked with the state and city since 1970, the bank said.

Illinois' action is the latest fallout from the scandal. Last week, California Treasurer John Chiang said the state would suspend ((/story/money/markets/2016/09/28/california-sanctions-wells-fargo-fleecing/91235264/)) several of its key banking relationships for 12 months to sanction the firm following allegations of "fleecing its customers."

Also last week, the New York Metropolitan Transportation Authority opted not to include Wells Fargo among banks pre-authorized for underwriting bonds as part of its regular three-year process. Instead, the MTA staff will review Wells Fargo's business practices before making a recommendation to the board.

**SEXTON, JOHN P.** Law Clerk to the Hon William G Clark IL Supreme Court, Richard J Daley Ctr 30th Fl Chgo IL 60602 *793-1342* 84 90 C

**SEXTON, MARY** 1211 Grant St Evanston IL 60201 *(708) 491-9283* 47 83 CA

**SEXTON, MARY CATHERINE** Assoc Genl Csl & Asst VP Hyatt Hotels Corp 200 W Madison St Chgo IL 60606 *750-8145* 58 83 CA

**SEXTON, MICHAEL F.** Rooks Pitts and Poust 55 W Monroe St Suite 1500 Chgo IL 60603 *372-5600* 58 83

**SEYFARTH, HENRY E.** Seyfarth Shaw Fairweather & Geraldson 55 E Monroe St 42nd Fl Chgo IL 60603 *346-8000* 08 30 CSA

**SEYFARTH SHAW FAIRWEATHER & GERALDSON** 55 E Monroe St 42nd Fl Chgo IL 60603 *346-8000*; 815 Connecticut Av NW Washington DC 20006-4004 (202) 483-2400; 2029 Century Park East Los Angeles CA 90067-3019 (213) 277-7200; 767 Third Av New York NY 10017 (212) 715-9000; 101 California St San Francisco CA 94111-5858 (415) 397-2823; & 770 L Street Suite 1150 Sacramento CA 95814-3325 (916) 446-3970; Avenue Louise 500 Boîte 8 1050 Brussels Belgium (32)2-547.60.25. Affiliate: Matthews Dinsdale & Clark Toronto Canada

Firm—Donald W. Anderson, John H. Anderson, James Baird, Edward W. Bergmann, Rody P. Biggert, Michael E. Blount, Jerome F. Buch, Phillip V. Carter, Mark A. Casciari, R. Theodore Clark, Jr., John L. Collins, Theodore E. Cornell III, Anthony J Crement, Douglas A. Darch, Thomas G. Dent, Lawrence C. DiNardo, Michael F. Dolan, Carol L. Dorge, William J. Fairbanks, Robert E. Field, Fredric H. Fischer, Joan McAvinn Gale, Raymond I. Geraldson, Stephen L. Golan, Timothy F. Haley, Valerie J. Hoffman, Charles C. Jackson, Eugene Jacobs, Jeffrey Janns, Carl E. Johnson, Robert H. Joyce, Frederick M. Kaplan, Gary S. Kaplan, Joel H. Kaplan, Edward J. Karlin, Raymond J. Kelly, Jr., Alvin L. Kruse, Andrew R. Laidlaw, Howard J. Levine, Michael R. Levinson, Mark A. Lies II, Ronald L. Lipinski, Bradford L. Livingston, Robert C. Long, Walter P. Loomis, Jr., Barbara K. Lundergan, Richard M. Lyon, Robert E. Maciorowski, Robert E. Mann, Ellen E. McLaughlin, Robert J. Mignin, Philip A. Miscimarra, William H. Nichols, Camille A. Olson, James Patrick Osick, Richard D. Ostrow, Robert J. Paley, Thomas J. Piskorski, J. Stephen Poor, Daniel J. Pope, John W. Powers, Keith A. Reed, Burton X. Rosenberg, Jeffrey K. Ross, Michael J. Rybicki, Jeremy P. Sackmann, David A. Saunders, John S. Schauer, Ray J. Schoonhoven, William Price Schurgin, Henry E. Seyfarth, Lee C. Shaw, Jeremy P. Sherman, Gerald D. Skoning, Robert J. Smith, Jr., William R. Sullivan, Jr., Cynthia G. Swiger, Carl H. Trieshmann, Robert B. Ulrich, Alan L. Unikel, Carson P. Veach, Stanley A. Walton III, Michael A. Warner, Robert F. Weber, John T. Weise, Harold C. Wheeler, Peter C. Woodford, Joseph E. Wyse, Sandra P. Zemm.

Associates—Ligne T. Adams, Marie L. Appleby, Douglas J. Bahr, James R. Beyer, Daniel M. Blouin, John F. Bowen, Ilene F. Breitbarth, Anthony B. Byergo, Rose Marie J. Chidichimo, Brent I. Clark, James L. Curtis, Jeryl Dezelick, Kathleen M. Dillon, Jean M. Kim Fairweather, Brenda D. Feis, Laura J. Garger, Julie A. Garrison, Jay A. Gitles, Jill A. Goldy, Maureen A. Gorman, Denise M. Grayson, Ellen D. Gregory, Pamela J. Griffin, Maura M. Hall, Marian C. Haney, Donna F. Hartl, Amy P. Hartman, Kathryn M. Hartrick, Daniel J. Hopkins, William N. Howard, Patricia J. Hruby, Krista J. Kaplan, Jeffrey C. Kauffman, Mark L. Keenan, Carolyn E. Knecht, Susan H. Krause, Richard B. Lapp, Christopher A. Lause, Bart A. Lazar, Lisa A. Lopatka, Gary A. Maguire, Marcia Andersen Mahoney, Condon A. McGlothlen, Cynthia C. Mooney, Kathleen M. Moran,

Re JUDGE
Wm B. SULLIVAN ?

Presented by Wells FARGO
Re ITS ATTORNEYS-

EX. 11

# EXHIBIT 13

# NEWS

# Racial Discrimination in Lending and Banking

## Summary:

Wells Fargo paid $175 million to settle a lawsuit brought by the Justice Department and the Office of the Comptroller of the Currency for mortgages issued between 2004 and 2009 that discriminated against more than 34,000 African-American and Hispanic borrowers.

Thousands of Minority homebuyers were pushed into expensive subprime loans funded by Wells Fargo despite qualifying for less risky mortgages. Another 30,000 minority borrowers paid higher fees and costs for their mortgages simply because of their race.

The city of Sacramento accused Wells Fargo of "refusing to extend credit to minority borrowers" who wanted to refinance their more expensive mortgages. Wells Fargo also resolved a lawsuit filed by the city of Baltimore in 2008 alleging the bank engaged in "reverse redlining," or intentionally targeting minority communities for predatory mortgage loans, leading to high foreclosures in minority neighborhoods.

EX. 13-A



# Illinois suspends business with Wells Fargo

**Mike Snider, USA TODAY**   Published 8:36 a.m. ET Oct. 3, 2016 | Updated 8:08 p.m. ET Oct. 3, 2016



*(Photo: 2014 photo by Ben Margot, AP)*

Wells Fargo (WFC (https://www.usatoday.com/money/lookup/stocks/WFC/)) is losing another big business customer: The state of Illinois.

Illinois Treasurer Michael Frerichs said Monday his office is suspending its annual $30 billion in investment activity with Wells Fargo for at least one year. The office oversees more than $1 trillion in transactions annually, Frerichs says, and Wells Fargo stands to lose "millions of dollars" in investment fees from the action.

"Wells Fargo is a big financial player in Illinois, and I hope to send the message that their unscrupulous practices are not welcomed and will not be tolerated," Frerichs said during a news conference.

Late Monday, Wells Fargo spokesman Gabriel Boehmer disputed the impact of the state's decision.

"Respectfully, the actual amount in lost revenue for the company from business conducted with the Illinois Treasurer's office is approximately $50,000 per year," Boehmer said.

Wells Fargo claws $41M from CEO
(https://www.usatoday.com/story/money/markets/2016/09/27/wells-fargo-pay-clawback-5-people-decide/91165192/)

The repercussions are the result of Wells Fargo's agreement last month to a $185 million civil settlement for restitution and fines after admitting that employees had opened accounts not authorized by customers. Wells Fargo says it has reimbursed fees incurred and fired more than 5,000 employees.

10/16/2018   Illinois suspends business with Wells Fargo
(https://www.usatoday.com/story/money/markets/2016/09/30/1341m-wells-fargos-ceos-retirement-payout-even-bigger-than-thought/91293136/)

Frerichs' action follows the proposal Friday from two Chicago aldermen that the city ban doing business with Wells Fargo for the next two years.

The state will also audit all other business it does with Wells Fargo, Frerichs said.

"We certainly understand the concerns that have been raised," Wells Fargo said in a statement. "We are very sorry and take full responsibility for the incidents in our retail bank. We have already taken important steps, and will continue to do so, to address these issues and rebuild the state's and city's trust."

Wells Fargo's government & institutional banking division, separate from the retail bank, has worked with the state and city since 1970, the bank said.

Illinois' action is the latest fallout from the scandal. Last week, California Treasurer John Chiang said the state would suspend (/story/money/markets/2016/09/28/california-sanctions-wells-fargo-fleecing/91235264/) several of its key banking relationships for 12 months to sanction the firm following allegations of "fleecing its customers."

Also last week, the New York Metropolitan Transportation Authority opted not to include Wells Fargo among banks pre-authorized for underwriting bonds as part of its regular three-year process. Instead, the MTA staff will review Wells Fargo's business practices before making a recommendation to the board.

# EXHIBIT 14

**‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖**
**\*1913318048\***

Doc# 1913318048 Fee $40.00

RHSP FEE:$9.00 RPRF FEE: $1.00
EDWARD M. MOODY
COOK COUNTY RECORDER OF DEEDS
DATE: 05/13/2019 11:05 AM PG: 1 OF 2

## SCRIVENER'S AFFIDAVIT
**Prepared By: (Name & Address)**

Robert T. Metz, Esq.

1839 W. Armitage Avenue

Chicago, Illinois 60622

**Property Identification Number:**

16-02-208-030-0000

**Document Number to Correct:**

1909322018

**Complete legal description attached as Exhibit A**

I, **Frederick Lappe**, the affiant of this Scrivener's Affidavit, whose relationship to the above-referenced document number is President of Grantor Intercounty Judicial Sales Corporation, do hereby swear and affirm that Document Number: 1909322018, included the following mistake: Grantee is listed as "Mr. Capital Group LLC", which is hereby corrected as follows: Grantee is "MR Capital Group LLC".

Finally, I, **Frederick Lappe**, the affiant, do hereby swear to the above correction, and believe it to be the true and accurate intention(s) of the parties who drafted and recorded the referenced document.

**Affiant's Signature Above**

4/9/19
**Date Affidavit Executed**

**NOTARY SECTION:**

State of Illinois )
)
County of Cook )

I, Angela C. Stephen, a Notary Public for the above-referenced jurisdiction do hereby swear and affirm that the above-referenced affiant did appear before me on the below indicated date and affix her/his signature or marking to the foregoing Scrivener's Affidavit after providing me with a government issued identification, and appearing to be of sound mind and free from any undue coercion or influence. **AFFIX NOTARY STAMP BELOW**

**Notary Public Signature Below**    **Date Notarized Below**

4/9/19

```
OFFICIAL SEAL
ANGELA C. STEPHEN
Notary Public - State of Illinois
My Commission Expires 7/10/2021
```

# EX. 14

# EXHIBIT 15





c# 1923413068 Fee $88.00

SP FEE:$9.00 RPRF FEE: $1.00
IARD N. MOODY
JK COUNTY RECORDER OF DEEDS
TE: 08/22/2019 01:11 PM  PG:  1 OF 1

## LIS PENDENS NOTICE

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT, EASTERN DIVISION**
**LIS PENDENS NOTICE**

# FILED

AUG 16 2019 AM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| ROSEE TORRES ET AL | |
| Plaintiff | Case No.   19-C 00112 |
| v. | |
| JUDICIAL SALE.INC., MR CAPITAL . | ON APPEAL #19-1657, 19-2114 |
| GROUP, LLC., ET AL    Defendant | |

I, the undersigned, do hereby certify that the above entitled cause was filed in the U. S. District
Court, Northern District, Eastern District of Illinois, on appeal before the Federal Court of Appeals
for the Seventh Circuit (Nos. 18-3686, 19-1657 consolidated with 19-2114), and that the property
affected by this cause is described as follows:

3546 West Beach Avenue, Chicago, Cook County, IL      Index no. 16-02-208-030-0000

### LEGAL DESCRIPTION

Lot 30 in Block 6 in Van Schaak and Herricks Subdivision of the Northwest 1/4 of the Northeast 1/4 of
Section 2, Township 39 North, Range 13, East of the Third Principal Meridian, in Cook County, Illinois.
County of Cook,
State of Illinois.
APN #: 16-02-208-030-0000

Atty. No.: _____
• Pro Se 99500

Name: ROSEE TORRES

Atty. for (if applicable):
PLAINTIFF-PRO SE

Address: 3546 WEST BEACH AVENUE

City: CHICAGO

State: IL   Zip: 60651

Telephone: 1-773-384-9122

Primary Email: rospr2@no-zero.zero

Rosee-Torres

A TRUE COPY-ATTEST
THOMAS G. BRUTON, CLERK

DEPUTY CLERK
U.S. DISTRICT COURT, NORTHERN
DISTRICT OF ILLINOIS
DATE: AUG 21 2019

S
P
S
M
SC
E
INT

# EX. 15